STATE OF NORTH CAROLINA v. HENRY LEVI PIGOTT

No. 228A90

(Filed 22 April 1992)

1. Criminal Law § 83 (NCI4th) — racial discrimination in selection of grand jury foreman — motion to dismiss indictments — denied

The trial court erred in a murder prosecution by denying defendant's motion to dismiss the indictments on the ground that the grand jury foreman was chosen in a racially discriminatory manner where the court summarily denied defendant's motion on the ground that the rule in *State v. Cofield*, 324 N.C. 452 (*Cofield II*) operated prospectively, but the principles announced in *State v. Cofield*, 320 N.C. 297 (*Cofield I*) were fully applicable to defendant's motion. Defendant would have been entitled to a hearing to determine whether there was in fact racial discrimination in the selection of the indicting grand jury foreman had his motion been timely filed.

**Am Jur 2d, Grand Jury § 14.**

**Group or class discrimination in selection of grand or petit jury as prohibited by Federal Constitution — Supreme Court cases. 33 L. Ed. 2d 783.**

2. Grand Jury § 43 (NCI4th) — racial discrimination in selection of grand jury foreman — motion to dismiss indictments — untimely filed

The trial court did not err by denying defendant's motion to dismiss indictments on the ground that the grand jury foreman was chosen in a racially discriminatory manner where the Certificate of Arraignment shows that defendant was allowed twenty-one days to file motions and waited some five months before filing his *Cofield* motion the week before trial

STATE v. PIGOTT

[331 N.C. 199 (1992)]

was to begin. Whether to grant relief was within the trial court's discretion.

**Am Jur 2d, Grand Jury §§ 21, 23.**

**3. Arson and Other Burnings § 32 (NCI4th) — arson — occupation by a living person — evidence sufficient**

The trial court did not err in denying defendant's motion to dismiss the charge of first degree arson on the ground of insufficient evidence that the building was occupied by a living person when the arson occurred where defendant poured kerosene throughout the building and lit a fire in the bedroom area of the building; the victim was still alive and breathing when defendant left; defendant told one witness that the building had not burned when doused with kerosene, so he got his girlfriend to go back with him to get some gas; defendant returned with a gallon of gasoline, poured it in the bedroom and kitchen area of the building, ignited it, and left; investigators discovered burned areas on part of the porch roof and around the window and door frame in addition to burned furnishings; the pathologist who examined the victim's body testified that it contained a potentially lethal fifty percent saturation of carbon monoxide, caused by smoke inhalation; and the pathologist concluded the victim had been alive while the fire was burning and generating carbon monoxide because of the significant quantity inhaled.

**Am Jur 2d, Arson and Related Offenses §§ 5, 46.**

**4. Kidnapping § 1.2 (NCI3d) — kidnapping and armed robbery — separate restraint — evidence sufficient**

There was such additional restraint as to satisfy that element of kidnapping in a prosecution for armed robbery, kidnapping, arson and murder where all the restraint necessary and inherent to the armed robbery was exercised by threatening the victim with the gun. When defendant bound the victim's hands and feet, he exposed the victim to a greater danger than that inherent in the armed robbery itself.

**Am Jur 2d, Abduction and Kidnapping § 9.**

**Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 43 ALR3d 699.**

STATE v. PIGOTT

[331 N.C. 199 (1992)]

5. **Kidnapping § 1.3 (NCI3d)— instructions—lesser offense not submitted—no error**

The trial court did not err by not instructing the jury on false imprisonment as a lesser included offense of first-degree kidnapping where the evidence indicates unerringly that defendant restrained the victim only for the purpose of facilitating the commission of armed robbery and for no other purpose. His decision to murder the victim and burn the premises came after the restraint underlying the kidnapping offense was complete.

**Am Jur 2d, Trial § 1429.**

6. **Criminal Law § 1237 (NCI4th)— Fair Sentencing Act—mitigating factors—apprehension of other felons—not found—error**

The trial court erred when sentencing defendant by failing to find in mitigation that defendant aided law enforcement officers in the apprehension of other felons where two officers testified that defendant had been an informant for some years and had provided information and participated in investigations which led to the arrests and convictions of felons. For a trial court to ignore uncontradicted, manifestly credible evidence of either an aggravating or a mitigating factor would render the Act's requirement to consider the statutory factors meaningless and would contradict the objective that the punishment imposed take into account factors that may diminish or increase the offender's culpability. N.C.G.S. § 15A-1340.4(a)(2)h.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Stephens, J.*, at the 14 August 1989 Special Criminal Session of Superior Court, BRUNSWICK County, upon defendant's conviction by a jury of murder in the first degree. Defendant's motion to bypass the Court of Appeals as to convictions and sentences on lesser charges was allowed pursuant to N.C.G.S. § 7A-31(b). Heard in the Supreme Court 14 November 1990.

**STATE v. PIGOTT**

[331 N.C. 199 (1992)]

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

EXUM, Chief Justice.

Defendant was charged in proper indictments and, following a capital trial, found guilty by a jury of first-degree murder, armed robbery, first-degree arson, and first-degree kidnapping. Defendant was acquitted on a charge of burglary arising from the same circumstances. The jury recommended and the trial judge imposed a sentence of life imprisonment in the capital murder case. We find no error in defendant's trial, but because the sentencing judge failed to find a statutory mitigating factor supported by uncontradicted and manifestly credible evidence, we hold defendant is entitled to a new sentencing hearing in the noncapital cases.

Evidence presented by the State, including a voluntary statement by defendant, tended to show that, shortly after midnight, 25 September 1988, defendant visited his employer, Darwin Freeman, who lived in an apartment adjoining the office of his lumber business. Defendant asked Freeman for a fifty-dollar loan, but was refused. Defendant left but soon returned with a gun. Defendant forced Freeman to lie on the floor, bound his hands with the sash from his robe, and ransacked the apartment and office for money. Defendant subsequently bound Freeman's feet to his hands and shot him in the head. After looking around for more money, defendant located some kerosene with which he doused rags and furnishings, which he then ignited. Defendant left again and later returned with his girlfriend and some gasoline to Freeman's apartment, where he poured the gasoline throughout the bedroom and kitchen, ignited it and left. Freeman's body was discovered in the burning building shortly before 4:00 a.m. A pathologist who performed the autopsy testified that cause of death was probably the gunshot wound to the head although carbon monoxide was found in sufficient quantities in the bloodstream to have caused death. The pathologist testified that the level of carbon monoxide in the bloodstream indicated that Freeman had been alive and breathed fumes from the fire for some time. He admitted that some carbon monoxide could have entered Freeman's body through reflexive inhalation.

**STATE v. PIGOTT**

[331 N.C. 199 (1992)]

## I.

[1] Defendant first contends the trial court erred in denying his motion to dismiss all indictments. The Brunswick County Grand Jury returned indictments in all cases against defendant on 27 February 1989. Defendant was arraigned on 13 March 1989. According to the Certification of Arraignment defendant pled not guilty to all charges and was allowed twenty-one days to file motions. Defendant was tried at the 14 August 1989 Criminal Session of Superior Court in Brunswick County.

Defendant's motion to dismiss the indictments was filed on 10 August 1989 under N.C.G.S. § 15A-955 and challenges the array of the grand jury on the ground the foreman was chosen in a racially discriminatory manner. The motion alleged that defendant was black and the grand jury foreman was white. The motion acknowledged that under N.C.G.S. § 15A-952 it should have been filed at or before arraignment where, as here, the arraignment was held before the session of court at which trial was calendared. The motion asked, pursuant to the statute, that the trial judge grant relief from the untimely filing and grant defendant a hearing.

The motion was based on our decisions in *State v. Cofield*, 320 N.C. 297, 357 S.E.2d 622 (1987) (*Cofield I*) and *State v. Cofield*, 324 N.C. 452, 379 S.E.2d 834 (1989) (*Cofield II*).

In *Cofield I* we held that racial discrimination in the selection of the grand jury foreman violates both the North Carolina and United States Constitutions and is a sufficient ground to dismiss an indictment returned by that grand jury and to vitiate any verdict and judgment entered against defendant pursuant to that indictment. Defendant, of course, remains subject to the State's power to reindict. We also held that a defendant makes out a prima facie case of racial discrimination by showing either that the selection process was not racially neutral or that for a substantial period of time relatively few blacks served as grand jury foremen when blacks were substantially represented as grand jury members.

In *Cofield II* we held as follows:

A method of selecting a grand jury foreman that meets the racially neutral standard must ensure that all grand jurors are considered by the presiding judge for his selection and that his selection be made on a racially neutral basis.

Because we have for the first time interpreted our state Constitution to require that, in meeting the racially neutral standard for selecting the foreman of the grand jury, the trial judge must consider all the grand jurors, *our holding in that regard will apply only to this case and cases in which the indicting grand jury's foreman is selected after the certification date of this opinion.*

324 N.C. at 460, 379 S.E.2d at 839. *Cofield II* was certified on 28 June 1989. The foreman of the grand jury indicting defendant having been selected before the indictments were returned, the selection obviously occurred before certification of *Cofield II* and well after our decision in *Cofield I.*

The trial court denied defendant's *Cofield* motion on two grounds. The first was that the principle set out in *Cofield II* applies prospectively only to cases in which the grand jury foreman was selected after the certification date of the opinion. The second ground was that defendant's failure to move to dismiss at or before arraignment waived, under N.C.G.S. § 15A-952, his right to make the motion.

The trial court nevertheless permitted defendant to enter for the record evidentiary support for his motion. Defendant offered the testimony of the Clerk of Superior Court of Brunswick County, Hon. Diana Morgan, which tended to show as follows:

According to Division of Motor Vehicles records, the racial composition of licensed drivers in Brunswick County over eighteen years old is 14.7 percent black and 84.69 percent white. The Clerk thought these records were a good reflection of the racial composition of the county. The Clerk's opinion was that the racial composition of Brunswick County grand juries over the last ten to fifteen years reflected that of the county. The Clerk said that after *Cofield I* the presiding judge had not selected grand jury foremen upon recommendation of various court personnel, as had been the prior custom. Rather, since *Cofield I* presiding judges had asked the grand jury itself to recommend a foreman and the judges appointed whomever was so recommended. New foremen are selected every six months. During the last 15 years two blacks have served as foremen of the Brunswick County Grand Jury. The last black foreman served July 1979 to December 1979. The Clerk was "virtually positive" that the foreman of the grand jury which indicted defendant was chosen by the post-*Cofield I* method.

Defendant's evidence thus tended to show that over the past fifteen years seven percent of grand jury foremen had been black when blacks had made up approximately fifteen percent of grand jury membership. It also tended to show that the foreman of the indicting grand jury was recommended by the grand jury itself and the presiding judge followed the recommendation.

The trial court erred in summarily denying defendant's *Cofield* motion on the ground that the rule in *Cofield II* operated prospectively. The *Cofield II* rule is that to have a racially neutral selection process the appointing judge must give equal consideration to all eligible members of the grand jury in determining whom to select as foreman. This rule operates, as the case plainly holds and as the trial court recognized, only prospectively. The principles announced in *Cofield I*, however, were fully applicable to defendant's motion. Had his motion been timely filed, he would have been entitled to a hearing to determine whether there was in fact racial discrimination in the selection of the indicting grand jury foreman.

[2] There is, however, no error in the trial court's summary denial of defendant's *Cofield* motion on the ground that it was not timely filed. The motion was a challenge to the grand jury array within the meaning of N.C.G.S. § 15A-955(1), and was expressly made pursuant to that statute. "A motion to dismiss or quash an indictment because of an irregularity in the selection of the grand jury is now governed by G.S. 15A-955." *State v. Duncan*, 30 N.C. App. 112, 114, 226 S.E.2d 182, 184, *disc. rev. denied*, 290 N.C. 779, 229 S.E.2d 34 (1976). More specifically, we analyzed the timeliness of a *Cofield* motion under the time limit requirements of N.C.G.S. § 15A-952(b)(4) in *State v. Robinson*, 327 N.C. 346, 361, 395 S.E.2d 402, 411 (1990), assuming that the motion was filed pursuant to N.C.G.S. § 15A-955(1). Under N.C.G.S. § 15A-952(b)(4), motions made pursuant to N.C.G.S. § 15A-955 are subject to the time limits of N.C.G.S. § 15A-952(c), which provides:

(c) Unless otherwise provided, the motions listed in subsection (b) must be made at or before the time of arraignment if arraignment is held prior to the session of court for which the trial is calendared. If arraignment is to be held at the session for which trial is calendared, the motions must be filed on or before five o'clock P.M. on the Wednesday prior to the session when trial of the case begins.

N.C.G.S. § 15A-952(c) (1988). Subsection (e) provides:

> (e) Failure to file motions listed in subsection (b) within the time required constitutes a waiver of the motion. The court may grant relief from any waiver except failure to move to dismiss for improper venue.

N.C.G.S. § 15A-952(e) (1988).

Here the Certificate of Arraignment shows that defendant was allowed twenty-one days to file motions. He failed to file his *Cofield* motion within that period. This delay waived his right to file the motion under the statute and rebuts any "presumption against waiver by a defendant charged with a crime of fundamental constitutional rights" in which courts must otherwise indulge. *State v. Covington*, 258 N.C. 501, 504, 128 S.E.2d 827, 829 (1963).

The trial court, by denying defendant's motion on the ground it was not timely filed under the statute, also denied by implication defendant's request that it grant relief from the waiver as the statute permits. We find no error in this ruling. The statute does not require that such relief be given, and it sets no standards for determining when to grant relief. It says simply that "[t]he court *may* grant relief." N.C.G.S. § 15A-952(e) (1988) (emphasis added). Under these circumstances we hold, as the Court of Appeals has already held, that whether to grant relief is a matter within the trial court's discretion. *State v. Wilson*, 57 N.C. App. 444, 291 S.E.2d 830, *disc. rev. denied*, 306 N.C. 563, 294 S.E.2d 375 (1982).

The trial court's denial of defendant's request that it grant relief from defendant's waiver, under the circumstances here, was a decision well within the trial court's discretion. Defendant was clearly allowed twenty-one days after arraignment to file pretrial motions. He waited some five months before filing his *Cofield* motion the week before trial was to begin. The motion came far too late in the process to be a fair candidate for relief from the waiver.

For the reasons stated we hold the trial court did not err in denying defendant's motion to dismiss the indictments.

## II.

[3] Defendant next contends the trial court erred in denying defendant's timely motion to dismiss the charge of first-degree arson. Defendant argues the State failed to produce sufficient evidence

to establish the building was occupied by a living person when the arson occurred.

In ruling on a motion to dismiss, the trial court must consider all the evidence admitted in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom, and it must decide whether there is substantial evidence of each element of the offense charged. *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "If there is any evidence that tends to prove the fact in issue or that reasonably supports a logical and legitimate deduction as to the existence of that fact and does not merely raise a suspicion or conjecture regarding it, then it is proper to submit the case to the jury." *State v. Artis*, 325 N.C. 278, 301, 384 S.E.2d 470, 483 (1989), *judgment vacated on other grounds*, --- U.S. ---, 108 L. Ed. 2d 604 (1990).

The common law definition of arson, in force in this state, is " 'the willful and malicious burning of the dwelling house of another person.' " *State v. Allen*, 322 N.C. 176, 196, 367 S.E.2d 626, 636 (1988) (quoting *State v. Vickers*, 306 N.C. 90, 100, 291 S.E.2d 599, 606 (1982) ). Because "the main purpose of common law arson is to protect against danger to those persons who might be in the dwelling house which is burned," *State v. Jones*, 296 N.C. 75, 77, 248 S.E.2d 858, 860 (1978), the codification of this offense for punishment purposes distinguishes between a dwelling house that is occupied and one that is not:

> There shall be two degrees of arson as defined at the common law. If the dwelling burned was occupied at the time of the burning, the offense is arson in the first degree and is punishable as a Class C felony. If the dwelling burned was unoccupied at the time of the burning, the offense is arson in the second degree and is punishable as a Class D felony.

N.C.G.S. § 14-58 (1986). The crime of arson is consummated by the burning of any part of the house; and a burning occurs when there is charring, that is, when wood is reduced to coal and its identity changed, but not when it is merely scorched or discolored by the heat. *State v. Oxendine*, 305 N.C. 126, 129, 286 S.E.2d 546, 547 (1982).

The State's evidence in support of the offense of first-degree arson tended to show as follows:

STATE v. PIGOTT

[331 N.C. 199 (1992)]

Defendant recounted in his pretrial statement offered against him at trial that he had poured kerosene throughout the building and had "lit a fire in the bedroom area of the building." When defendant left, the victim was "still alive and breathing." Defendant told one witness that the building had not burned when doused with kerosene, so he got his girlfriend "to go back with him to get some gas." Defendant returned with a gallon of gasoline, poured it in the bedroom and kitchen area of the building, ignited it, and left. Investigators discovered burned areas on part of the porch roof and around the window and door frame in addition to burned furnishings. The pathologist who examined the victim's body testified that it contained a potentially lethal fifty percent saturation of carbon monoxide, caused by smoke inhalation. The pathologist concluded the victim had been alive while the fire was burning and generating carbon monoxide because of the significant quantity inhaled.

We hold this evidence supports the elements of first-degree arson. From it a jury could reasonably infer that the victim, while living, inhaled quantities of smoke containing carbon monoxide from the same fire that caused the charring of the window and door frames. If a reasonable inference of defendant's guilt can be drawn from evidence that is not merely speculative, but real and substantial, "then it is the jury's decision whether such evidence convinces them beyond a reasonable doubt of defendant's guilt." *State v. Irwin*, 304 N.C. 93, 98, 282 S.E.2d 439, 443 (1981). We conclude the trial court did not err in denying defendant's motion to dismiss the charge of first-degree arson.

III.

[4] Defendant also assigns error to the trial court's failure to dismiss the kidnapping charge. He argues the State presented insufficient evidence of a restraint separate from that inherent in the armed robbery; therefore, he cannot be convicted of both crimes under the principle first announced in *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978), and followed in *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439.

The offense of kidnapping, defined by statute, provides in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age

or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . . .

(2) facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

N.C.G.S. § 14-39 (1986). In *Irwin*, this Court interpreted the statute to mean that "it was not the legislature's intent in enacting G.S. 14-39(a) to make a restraint which was an inherent, inevitable element of another felony, such as armed robbery or rape, a distinct offense of kidnapping thus permitting conviction and punishment for both crimes." *State v. Irwin*, 304 N.C. at 102, 282 S.E.2d at 446.

In accord with these cases the trial court submitted the offense of kidnapping to the jury on the theory that defendant unlawfully restrained the victim by binding his hands and feet for the purpose of facilitating the commission of armed robbery, and it informed the jury of the State's burden to prove this restraint was independent of any restraint inherent in the offense of armed robbery. Defendant now contends the State failed to carry this burden.

In *State v. Irwin*, this Court said the defendant's forcing the victim to move to the back of the store at knifepoint was "an inherent and integral part of the attempted armed robbery," 304 N.C. at 103, 292 S.E.2d at 446, because the journey was necessitated by the defendant's objective that the victim obtain drugs by going to the prescription counter at the back of the store and opening the safe. We held the victim's removal was "a mere technical asportation and insufficient to support conviction for a separate kidnapping offense." *Id.*

In *Fulcher* the victims were forced to lie on a bed and their hands were bound behind their backs with tape. They were then each compelled to commit an act of oral sex upon the person of the defendant. We held that, once the victims' hands were bound and their submission procured by the defendant's threat to inflict serious injury upon them with a deadly weapon, this having been accomplished to facilitate the commission of the felony of crime against nature, "the crime of kidnapping was complete, irrespective of whether the then contemplated crime against nature ever occurred." 294 N.C. at 524, 243 S.E.2d at 352. "The restraint of each of the women was separate and apart from, and not an inherent

incident of, the commission upon her ‘of the crime against nature, though closely related thereto in time." *Id.*

The key question here is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping "exposed [the victim] to greater danger than that inherent in the armed robbery itself, . . . [or] is . . . subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *State v. Irwin,* 304 N.C. at 103, 292 S.E.2d at 446.

On its facts this case is more like *Fulcher* than like *Irwin.* Defendant bound his victim twice. In his statement defendant said he first threatened the victim with a gun, then forced him to lie on his stomach and tied his hands behind his back. This restraint was sufficient to enable defendant to search the office and adjoining apartment for money. At this point defendant returned and asked the victim if he had any more money. The victim responded he did not. Defendant then secured the victim's feet to his hands, rendering him utterly helpless, and shot him. He then continued his search for money.

We hold that all the restraint necessary and inherent to the armed robbery was exercised by threatening the victim with the gun. When defendant bound the victim's hands and feet, he "exposed [the victim to a] greater danger than that inherent in the armed robbery itself." *Id.* This action, which had the effect of increasing the victim's helplessness and vulnerability beyond the threat that first enabled defendant to search the premises for money, constituted such additional restraint as to satisfy that element of the kidnapping crime.

## IV.

[5] Defendant next asserts the trial court erred in not instructing the jury on false imprisonment as a lesser included offense of first-degree kidnapping.

The difference between kidnapping and the lesser included offense of false imprisonment is the purpose of the confinement, restraint, or removal of another person: the offense is kidnapping if the purpose of the restraint was to accomplish one of the purposes enumerated in the kidnapping statute. *State v. Whitaker,* 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986). The kidnapping indictment here alleged defendant unlawfully confined and restrained Darwin

STATE v. PIGOTT

[331 N.C. 199 (1992)]

Freeman "for the purpose of facilitating the commission of a felony, to wit: Armed Robbery, First Degree Arson and Murder." "When an indictment for kidnapping alleges an intent to commit a particular felony, the State must prove the particular intent alleged." *Id.* at 519, 342 S.E.2d at 517. Intent is a condition of the mind ordinarily susceptible of proof only by circumstantial evidence. Evidence of a defendant's actions following restraint of the victim is some evidence of the reason for the restraint. *E.g., State v. Gray*, 322 N.C. 457, 461, 368 S.E.2d 627, 629 (1988). *See also State v. Peacock*, 313 N.C. 554, 559, 330 S.E.2d 190, 193 (1985).

At the close of the evidence, the State elected to submit to the jury only the underlying felony of armed robbery as the basis for the kidnapping charge.[1] Defendant argues the evidence did not point unerringly to restraint for the purpose of facilitating armed robbery; he says it points as strongly to restraint for the purposes of facilitating the commission of arson or murder. The key, defendant argues, is defendant's intent at the time of the restraint.

The crux of the question whether the lesser included offense of false imprisonment should have been submitted to the jury is "whether 'there was evidence from which the jury could have concluded that the defendant, although restraining . . . the victim, [did so] for some purpose other than . . . to commit' " armed robbery. *State v. Whitaker*, 316 N.C. at 520-21, 342 S.E.2d at 518 (quoting *State v. Lang*, 58 N.C. App. 117, 118-19, 293 S.E.2d 255, 256, *cert. denied*, 306 N.C. 747, 295 S.E.2d 761 (1982) ). In *Whitaker*, this Court held it was error not to instruct the jury on the lesser included offense of false imprisonment and ordered a new trial.[2]

---

1. Had the State not made this election, it would have been permitted to rely on all three felonies alleged in the indictment, alternatively or conjunctively, to sustain a kidnapping conviction. Having alleged all three as purposes of the restraint, the State needed to have proved only one, but it need not have elected which one before submission of the case to the jury. Then, only if there was evidence of some other underlying felony not alleged, or the evidence of the underlying felonies alleged was equivocal, as purposes of the restraint, would the lesser included offense of false imprisonment have to be submitted. *See State v. Whitaker*, 316 N.C. 515, 342 S.E.2d 514; *see also infra* note 2.

2. In *Whitaker*, the indictment, unlike in the instant case, alleged only rape as being the purpose of the restraint. Thus, the State in *Whitaker* was bound to prove that rape was the purpose of the restraint. Since there was evidence that other crimes not alleged in the indictment might have been the purpose

STATE v. PIGOTT

[331 N.C. 199 (1992)]

The evidence here [did] not so unerringly point to a purpose to rape the victim as to preclude the jury from reasonably finding defendant guilty of the lesser included offense of false imprisonment. Left to its own devices after having been instructed fully on all pertinent law in the case, the jury reasonably could have inferred from defendant's statement and acts that he did not intend to attempt to rape his victim, but intended only to commit some sexual offense short of attempted rape.

*Id.* at 521, 342 S.E.2d at 518.

In this case defendant's actions following his restraint of the victim included murder and arson as well as armed robbery and are arguably some evidence that one of those offenses, rather than armed robbery, motivated the restraint. By contrast to *Whitaker*, however, other circumstances surrounding the kidnapping and the sequence of their occurrence demonstrate overwhelmingly that defendant was motivated throughout by an intent to rob.

In his statement defendant recounted that he had first come to his employer's office asking to borrow fifty dollars because his car was out of gas. When defendant said he had spent all his money on drugs, the victim refused to lend defendant money, but permitted defendant to borrow a company truck in order to find another loan source. Defendant drove to his own residence, picked up his .22-caliber rifle, and returned to his employer's office. Placing the gun out of sight, defendant told the victim he had not found another lender. The victim again refused to lend defendant money for drugs. At this point defendant pretended to leave, reached around the door for his rifle, and re-entered, pointing the gun at the victim. After forcing the victim to the floor and securing his hands, defendant ransacked the office and adjoining apartment, taking more than one hundred dollars. He returned to the victim and asked him if he had any more money. When the victim said there was no more money in the building, defendant secured the victim's feet to his hands and shot him in the head. He then continued to search the premises for more money. During this time he could hear the victim continuing to breathe. Defendant then "decided to burn the building and attempt to hide any of the evidence" that he had been at the scene. He found kerosene in a storage

of the restraint, the lesser included offense of false imprisonment was required to be submitted to the jury. *See supra* note 1.

shed and poured it throughout the building. The last time he saw the victim before he ignited the kerosene, the victim was still alive and breathing.

We hold this evidence, considered in the light most favorable to defendant, *State v. Whitaker*, 316 N.C. at 518, 342 S.E.2d at 516, indicates unerringly that defendant restrained the victim only for the purpose of facilitating the commission of armed robbery and for no other purpose. His decision to murder the victim and burn the premises came after the restraint underlying the kidnapping offense was complete. The trial court, therefore, did not err in not submitting the lesser included offense of false imprisonment.

## V.

[6] Finally, defendant contends the trial court erred in the sentencing phase of his trial by failing to find in mitigation of offenses governed by the Fair Sentencing Act that defendant had aided law enforcement officers in the apprehension of other felons. We agree.

Defendant was sentenced to fifty years for first-degree arson, for which the presumptive term is fifteen years; he was sentenced to forty years for robbery with a dangerous weapon, for which the presumptive term is twelve years; and he was sentenced to forty years for first-degree kidnapping, for which the presumptive term is twelve years. *See* N.C.G.S. § 15A-1340.4(f) (1988). The record fails to reflect that in determining defendant's punishment for these crimes, the trial judge considered the statutory mitigating factor that defendant had "aided in the apprehension of another felon." N.C.G.S. § 15A-1340.4(a)(2)(h) (1988).

At defendant's sentencing hearing, a narcotics officer for the Brunswick County Sheriff's Department testified that between 1985 and 1988, defendant had been a paid informant, targeting and identifying known drug offenders for the Sheriff's Department. The officer estimated defendant had assisted in ten to twelve investigations leading to ten arrests of drug users or dealers in Brunswick County. In addition, an officer with the Ocean Isle Police Department testified he had known defendant as an informant since 1976. He had used information given him by defendant about alcohol violations, stolen property, break-ins, and marijuana sellers and users through the last years of the 1970s and from 1984 through part of 1987. The officer estimated defendant's information had

led to the arrests of between twenty and twenty-five felons. The officer testified that in 1987 defendant had also helped with drug investigations in South Carolina. The officers' testimony was uncontradicted.

The Fair Sentencing Act obligates the trial court to consider every statutory aggravating and mitigating factor before imposing a sentence exceeding the presumptive term, and "specifically [to] list in the record each matter in aggravation or mitigation that he finds proved by a preponderance of the evidence." N.C.G.S. § 15A-1340.4(b) (1988). For a trial court to ignore uncontradicted, manifestly credible evidence of either an aggravating or a mitigating factor would render the Act's requirement to consider the statutory factors meaningless and would contradict the objective that the punishment imposed take " 'into account factors that may diminish or increase the offender's culpability.' " *State v. Gardner*, 312 N.C. 70, 72, 320 S.E.2d 688, 689 (1984) (quoting N.C.G.S. § 15A-1340.3 (Supp. 1981) ). In order to give proper effect to the Fair Sentencing Act, when evidence of the existence of a statutory mitigating factor is both uncontradicted and manifestly credible, the trial court's failure to find that factor must be deemed error. *State v. Jones*, 309 N.C. 214, 220, 306 S.E.2d 451, 455 (1983).

The position of a defendant arguing that the trial court erred in failing to find a mitigating factor proved by uncontradicted evidence is analogous to "asking the court to conclude that 'the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn,' and that the credibility of the evidence 'is manifest as a matter of law.' " *State v. Jones*, 309 N.C. at 220, 306 S.E.2d at 455. In this case the uncontradicted testimony of the Ocean Isle police officer that defendant had helped him obtain the arrests of numerous individuals on felony charges is manifestly credible because "there are only latent doubts as to the credibility of oral testimony and the opposing party has 'failed to point to specific areas of impeachment and contradictions.' " *Id.* (quoting *Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976) ); *accord State v. Cartwright*, 81 N.C. App. 144, 147, 343 S.E.2d 557, 559 (1986). Moreover, the officer's testimony was corroborated by evidence of similar aid to Brunswick County narcotics officers and to law enforcement officers in South Carolina.

We hold, therefore, that the trial court erred in imposing sentences in excess of the presumptive terms for each noncapital

STATE ex rel. UTILITIES COMM. v. PUBLIC STAFF

[331 N.C. 215 (1992)]

offense without finding and considering the mitigating factor that defendant had "aided in the apprehension of another felon." N.C.G.S. § 15A-1340.4(a)(2)(h) (1988). For this error defendant is entitled to be resentenced for all offenses except the murder.

No error in the trial; remanded for a new sentencing hearing.

Justice LAKE did not participate in the consideration or decision of this case.