ZACHARY, Judge.
*30 Nathaniel Malone China (defendant) appeals from judgments entered upon his convictions for felonious breaking and entering, second-degree kidnapping, first-degree sex offense, intimidating a witness, misdemeanor assault inflicting serious injury, and having attained the status of a habitual felon. On appeal, defendant argues that the trial court erred by admitting evidence that defendant committed these offenses shortly after being released from prison, and by denying defendant's *31 motion to dismiss the charge of second-degree kidnapping for insufficiency of the evidence. Upon careful review of defendant's arguments, in light of the record on appeal and the applicable law, we conclude that defendant has failed to preserve for appellate review the admissibility of testimony indicating that defendant had spent time in prison, and that the trial court erred by *326 denying defendant's motion to dismiss the charge of second-degree kidnapping. Accordingly, we find no error in defendant's convictions for felonious breaking or entering, first-degree sex offense, intimidating a witness, misdemeanor assault inflicting serious injury, and having attained the status of a habitual felon. We vacate defendant's conviction for second-degree kidnapping and remand for correction of the judgments to reflect this.
I. Factual and Procedural Background
On 4 November 2013, the Durham County Grand Jury indicted defendant for first-degree kidnapping, felonious breaking or entering, and felonious assault inflicting serious bodily injury. The Grand Jury indicted defendant for first-degree sex offense, crime against nature, and intimidating a witness on 7 April 2014, and on 1 June 2015, defendant was indicted for being a habitual felon. On 26 January 2016, the State dismissed the indictment charging defendant with intimidating a witness and defendant agreed to proceed on that charge pursuant to a criminal bill of information. Prior to trial, the State dismissed the charge of crime against nature. The remaining charges against defendant came on for trial at the 26 January 2016 criminal session of Durham County Superior Court. Defendant did not present evidence at trial. The State's evidence tended to show, in relevant part, the following.
Nichelle Brooks and defendant began a romantic relationship in 2008. At some point before 2013, defendant was confined to prison. In 2012 or 2013, while defendant was in prison, Ms. Brooks began a romantic relationship with Mark.[1] Ms. Brooks did not visit defendant in prison; however, they sometimes talked on the phone and, during one of their phone calls, Ms. Brooks told defendant that she had a new boyfriend. In early October 2013, after defendant had been released from prison, he called Ms. Brooks and asked if they could resume their relationship. Ms. Brooks agreed to meet with defendant at her apartment to discuss their situation, in "the hope that he would just understand" her "decision in ending what we had and moving on." Shortly thereafter, defendant visited Ms. Brooks overnight at her apartment.
*32 After defendant's overnight stay, Ms. Brooks told Mark that she had previously had a relationship with defendant and asked Mark to stay away for a few days to enable Ms. Brooks to "get things in order" with defendant. Mark testified that in October 2013 he and Ms. Brooks had been dating for about a year. They did not discuss their past relationships and Mark was not aware that Ms. Brooks had been involved with defendant until she asked Mark to stay away for a few days.
On 14 October 2013, after Mark had absented himself from Ms. Brooks' apartment for several days, Ms. Brooks told Mark that things were "cordial" with defendant and that Mark could resume visiting Ms. Brooks at her home. Mark spent that night with Ms. Brooks at her apartment. On the morning of 15 October 2013, Ms. Brooks took her daughter to school and went to school at the Durham Beauty Academy, leaving Mark alone in the apartment.
Shortly after Mark awoke, he heard knocking at Ms. Brooks' door, and when he looked through a peephole in the door he saw two men whom he did not recognize. At trial, Mark identified one of the two men as defendant. Mark returned to the bedroom and hurriedly dressed for work. Mark heard banging noises and just as Mark finished dressing he heard a "boom, like the door was just kicked in." Defendant ran back to the bedroom cursing, and immediately punched Mark, who "never [had] a chance to hit him back." Defendant punched Mark "straight in the face" with his fist, and Mark fell onto the bed. Defendant "got on top of" Mark and continued punching him in the face while cursing at Mark. As a result of the beating, Mark felt "weak" and rolled over onto his face. While defendant was on the bed punching Mark in the back of the neck, he pulled Mark's pants down, spread his "anal cheek[s]" and "rammed" his erect penis into Mark's anus several times. Mark swung his arms and defendant jumped up and dragged *327 Mark off the bed by his ankles. Defendant and his companion started "kicking and stomping" Mark, who curled up on the floor, trying to protect himself. When an opportunity arose, Mark ran out of the house and drove to his place of employment. When he arrived there, he asked for help and was taken to the hospital. As a result of the assault, Mark suffered physical injuries and emotional damage.
At the close of the State's evidence and again at the end of all the evidence, defendant moved for dismissal of the charges. The trial court agreed to submit the charge of misdemeanor assault inflicting serious injury to the jury, rather than the charge of felonious assault inflicting serious bodily injury, and denied defendant's motion with respect to the other charges. On 1 February 2016, the jury returned verdicts finding *33 defendant guilty of felonious breaking or entering, intimidation of a witness, second-degree kidnapping, first-degree sex offense, and misdemeanor assault inflicting serious injury. Defendant entered a plea of guilty to being a habitual felon. The trial court imposed a sentence of 150 days' imprisonment for misdemeanor assault inflicting serious injury, and consecutive prison sentences totaling 590 to 799 months for the other offenses. On 5 February 2016, the trial court conducted a resentencing proceeding, imposing the same sentences but arresting judgment on defendant's conviction for misdemeanor assault inflicting serious injury. Defendant gave notice of appeal in open court.
II. Admission of Evidence Concerning Defendant's Previous Incarceration
At trial, Ms. Brooks testified that she had received phone calls from defendant while he was in a federal prison. She told the jury that she could recognize that defendant's calls were from a prison facility based on a recording that identified the call as coming from a federal prison. She identified a later call from defendant as originating from outside prison, because of the absence of this recording. On appeal, defendant argues that the trial court committed reversible error by admitting this testimony. Defendant contends that this evidence was not admissible under North Carolina Rule of Evidence 404(b), and that its admission was prejudicial to defendant.
"For us to assess defendant's challenge, however, he was required to properly preserve the issue for appeal by making a timely objection at trial." State v. Joyner , --- N.C. App. ----, ----, 777 S.E.2d 332, 335 (2015) (citing State v. Thibodeaux , 352 N.C. 570, 577, 532 S.E.2d 797, 803 (2000),[2] and N.C.R. App. P. 10(a)(1) (2015)). "[T]o preserve for appellate review a trial court's decision to admit testimony, 'objections to [that] testimony must be contemporaneous with the time such testimony is offered into evidence' and not made only during a hearing out of the jury's presence prior to the actual introduction of the testimony." Ray , 364 N.C. at 277, 697 S.E.2d at 322 (quoting Thibodeaux , 352 N.C. at 581-82, 532 S.E.2d at 806 ).
*34 Defendant asserts on appeal that this "error was preserved for appellate review by [defendant's] pretrial motion to preclude evidence of his recent release from prison and his timely objection during trial to the State's proffer of testimony concerning his recent release from prison." It is true that defendant made a pretrial motion to exclude this evidence, and that he objected during trial to the State's intention to elicit the challenged testimony from Ms. Brooks. However, defendant made no objection to Ms. Brooks' testimony in the presence of the jury regarding defendant's incarceration. For example, we note the following excerpts from the transcript:
PROSECUTOR: How often would [defendant] call?
MS. BROOKS: Not ... not often. ...
*328 PROSECUTOR: Where was he calling you from?
MS. BROOKS: He was calling from prison.
...
PROSECUTOR: Do you remember the last time that you spoke to him on the phone when he was calling from incarceration?
MS. BROOKS: I want to say the summer[.] ...
...
PROSECUTOR: When's the next time that you did speak to [defendant]?
MS. BROOKS: I spoke with him [in] October, early October.
...
PROSECUTOR: Previously when you said that he was calling from custody, how do you know that he was in custody?
MS. BROOKS: The recording that you get, you know, when you receive the call, the recording.
PROSECUTOR: Does it identify something?
MS. BROOKS: The actual recording identifies it as a federal prison or something like that.
Defendant did not object to any of the testimony quoted above. "It is insufficient to object only to the presenting party's forecast of the *35 evidence." Ray , 364 N.C. at 277, 697 S.E.2d at 322. In the present case, "defendant objected to the admission of [the challenged] evidence ... during a hearing out of the jury's presence ... but did not then subsequently object when the evidence was actually introduced at trial. Thus, defendant failed to preserve for appellate review the trial court's decision to admit [this] evidence[.]" Id . (internal quotation omitted). "And since defendant failed to specifically and distinctly allege plain error in his brief, he waived his right to have this issue reviewed under that standard." Joyner , --- N.C. App. at ----, 777 S.E.2d at 335 (citing N.C.R. App. P. 10(a)(4), and State v. Lawrence , 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) ). We conclude that defendant failed to preserve this issue for appellate review or for plain error review. Accordingly, we do not reach the merits of defendant's argument.
III. Sufficiency of the Evidence of Kidnapping
Defendant argues next that the trial court erred by denying his motion to dismiss the charge against him of second-degree kidnapping. Defendant was indicted on a charge of first-degree kidnapping; however, prior to trial, the State elected to proceed on the lesser-included offense of second-degree kidnapping. On appeal, defendant asserts that there was no evidence that he restrained Mark beyond that degree of restraint that is inherent in the commission of a sexual or physical assault. After careful review of the transcript, in view of our jurisprudence on this issue, we conclude that defendant's argument has merit.
"When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator." State v. Cross , 345 N.C. 713, 716-17, 483 S.E.2d 432, 434 (1997) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). "[I]f there is substantial evidence-whether direct, circumstantial, or both-to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." State v. Hunt , 365 N.C. 432, 436, 722 S.E.2d 484, 488 (2012) (internal quotation omitted). "In considering the motion, the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence, and resolving any contradictions in favor of the State." State v. Anderson , 181 N.C.App. 655, 659, 640 S.E.2d 797, 801 (2007) (citation omitted).
*36 In this case, the jury was instructed that it should find defendant guilty of second-degree kidnapping if the evidence established beyond a reasonable doubt that defendant had unlawfully restrained Mark for the purpose *329 of terrorizing him. Defendant does not dispute that this was a valid instruction on the offense of kidnapping. N.C. Gen. Stat. § 14-39(a) (2015) provides, in relevant part, that:
(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person ... shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of [one of the following statutorily defined purposes, including] ... [d]oing serious bodily harm to or terrorizing the person so confined, restrained or removed[.]
"The offense of kidnapping, as it is now codified in N.C.G.S. § 14-39, did not take form until 1975, when the General Assembly ... abandoned the traditional common law definition of kidnapping for an element-specific definition." State v. Ripley , 360 N.C. 333, 337, 626 S.E.2d 289, 292 (2006). However:
In 1978, ... [the Supreme Court of North Carolina] perceived that with this new definition came the potential for a defendant to be prosecuted twice for the same act. ... Accordingly, this Court noted:
"It is self-evident that certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. ... We construe the word 'restrain,' as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony."
Id . (quoting State v. Fulcher , 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978) ). "To be sure, more than one criminal offense may arise out of the same criminal course of action. When, for example, the kidnapping offense is a wholly separate transaction, completed before the onset of the accompanying felony, conviction for both crimes is proper."
*37 State v. Boyce , 361 N.C. 670, 672-73, 651 S.E.2d 879, 881 (2007) (citing Ripley , 360 N.C. at 337-38, 626 S.E.2d at 292 ).
In the present case, defendant argues that there is no evidence in the record that Mark was subjected to any restraint beyond that inherent in defendant's commission of first-degree sex offense and misdemeanor assault inflicting serious injury. We agree.
We have closely reviewed the portion of the transcript in which Mark testified about defendant's assaults upon him, as well as the statements that Mark gave to the Durham Police Department. All of the relevant evidence describes a sudden attack, in which defendant broke down the door of Ms. Brooks' apartment, ran into the bedroom where Mark was dressing, and assaulted him. Mark testified that after defendant entered the bedroom, he immediately punched Mark hard enough to throw Mark back onto the bed. Defendant continued punching Mark while he committed a brief, brutal sexual attack. After the sexual offense occurred, defendant dragged Mark off the bed by his ankles and then defendant and defendant's companion kicked Mark in the head and body.
There is no evidence in the record suggesting that Mark was "restrained" beyond the degree of restraint required to overpower Mark and assault him. For example, there is no evidence that defendant bound Mark's hands or feet, or that defendant's friend restrained Mark to facilitate defendant's assault. The entire incident took no more than a few minutes, after which Mark ran out of the apartment. We conclude that there was insufficient evidence that Mark was subjected to any restraint beyond the restraint that is inherent in defendant's commission of the assaults on Mark. Therefore, the trial court erred by denying defendant's motion to dismiss the charge of second-degree kidnapping. Defendant was sentenced to consecutive prison terms totaling 590 to 799 months, to be served in the following order: first-degree sex offense, second-degree kidnapping, intimidating a witness, and felonious breaking or entering. Upon remand, the trial court should vacate defendant's conviction for second-degree kidnapping and correct the *330 judgments so that the sentence for intimidating a witness is served at the expiration of the sentence for first-degree sex offense, and the sentence for felonious breaking or entering is served at the expiration of the sentence for intimidating a witness. The resulting sentence will total 502 to 681 months, which is approximately 41 to 56 years.
IV. Conclusion
For the reasons discussed above, we conclude that defendant failed to preserve the issue of the admissibility of evidence that defendant *38 committed these offenses shortly after being released from prison, and that the trial court erred by denying defendant's motion to dismiss the charge of second-degree kidnapping. Accordingly, we find no error in part, vacate in part, and remand to the trial court for correction of the judgments in accordance with this opinion.
NO ERROR IN PART, VACATED AND REMANDED IN PART.
Judges ELMORE concurs.
Judge DILLON concurs in part and dissents in part by separate opinion.

We refer to the complaining witness in this case by the pseudonym "Mark" for ease of reading and to protect his privacy.

"Following this Court's opinion in Thibodeaux , the General Assembly amended N.C. Rule of Evidence 103(a) to provide that once the trial court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal. ... However, in State v. Oglesby this Court held that the 2003 amendment to Rule 103(a) is unconstitutional[.]... Therefore, we consider the statements taken from Thibodeaux and referenced herein an accurate statement of the current law." State v. Ray , 364 N.C. 272, 277 n1, 697 S.E.2d 319, 322 n1 (2010) (internal quotation and citations omitted).