IN THE SUPREME COURT OF NORTH CAROLINA

No. 95A17

Filed 6 April 2018

STATE OF NORTH CAROLINA

v.

NATHANIEL MALONE CHINA

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 797 S.E.2d 324 (2017), finding no error in part and vacating and remanding in part judgments entered on 5 February 2016 by Judge Henry W. Hight, Jr. in Superior Court, Durham County. Heard in the Supreme Court on 12 December 2017.

*Joshua H. Stein, Attorney General, by Grady L. Balentine, Jr., Special Deputy Attorney General, for the State-appellant.*

*Richard Croutharmel for defendant-appellee.*

HUDSON, Justice.

Defendant Nathaniel Malone China was convicted by a jury on 1 February 2016 of a number of offenses, including felonious breaking or entering, first-degree sexual offense, second-degree kidnapping, misdemeanor assault inflicting serious injury, and intimidating a witness. Here we must decide whether there was sufficient evidence of restraint that was separate and apart from that inherent in the commission of the first-degree sex offense to support the kidnapping conviction. The

Court of Appeals concluded that there was not and vacated defendant's conviction for second-degree kidnapping. *State v. China*, ___ N.C. App. ___, ___, 797 S.E.2d 324, 328-30 (2017). Because we conclude that the evidence of restraint beyond that inherent in the commission of the sex offense did suffice, we reverse the decision of the Court of Appeals.

Factual and Procedural Background

In 2008 defendant began a romantic relationship with Nichelle Brooks. At some point thereafter, defendant was sent to prison. During his incarceration, until the summer of 2013, defendant continued to talk occasionally with Ms. Brooks by telephone. On one of these phone calls, Ms. Brooks, who was then involved with Mark,[1] informed defendant that she had begun a new relationship. Nonetheless, defendant called Ms. Brooks after his release from prison seeking to resume their prior relationship. Ms. Brooks agreed to meet with defendant at her apartment, hoping to make clear that their relationship was over. Later that day, defendant met Ms. Brooks at her apartment, spent the night, and then left the following morning.

During this time, Ms. Brooks asked Mark not to visit her for a few days so that she could "get things in order" with defendant. Believing that she had successfully ended her relationship with defendant, Ms. Brooks told Mark that he could return to her apartment. Mark visited Ms. Brooks on 14 October 2013 and spent the night at

---

[1] Like the Court of Appeals, we refer to the victim here by the pseudonym "Mark" for simplicity and to protect his privacy.

her apartment.  The following morning, 15 October, Mark was still asleep when Ms. Brooks left to take her daughter to the bus stop and to go to school at Durham Beauty Academy.

Mark awoke when he heard people outside of the apartment.  He looked out the window and, not seeing anything of concern, returned to bed.  Moments later, Mark heard a knock; he went to the door, looked through the peephole, and saw two men he did not recognize.  At trial, Mark identified one of these men as defendant. As Mark made his way back to the bedroom, he heard banging on the door, enough to cause the door to shake.  Mark began to dress in his work uniform, when he heard a loud boom as the door was kicked in.

Defendant rushed into the apartment and ran towards the bedroom, cursing at Mark.  Before Mark had a chance to defend himself, defendant punched him in the face, knocking him sideways onto the bed.  Defendant then got on the bed and on top of Mark, continuing to curse and strike Mark in the face with his fist.  Defendant was hitting Mark solely in the face up to this point, and the last blow caused Mark to roll over completely onto his stomach. At that point, defendant punched Mark in the back of the head, stunning him.  Defendant then pulled down Mark's pants and anally penetrated him three times with his penis.

Mark then swung his right arm to get defendant off of him, and defendant "jumped off of" Mark.  While Mark was "kicking away" at defendant, defendant grabbed him by the ankles, yanking him off the bed and causing the back of Mark's

head to hit the floor. Defendant called to his companion, who came into the room; together they began "kicking and stomping" Mark, who was on the floor with his back pressed against a dresser. Mark testified that the two men were kicking and stomping "[m]y face, my head, my back, my ribs, my legs, my knees. . . . It was everywhere." During this time, Mark "was balling [his body] up" trying to protect himself. Eventually, defendant and the other man stopped kicking, and Mark quickly got up and ran out of the apartment. Mark still had his keys in his pocket, and although he was dizzy and bleeding badly, he ran to his car and was able to drive to his place of employment for help. Mark woke up at Duke Hospital in a significant amount of pain. In addition to the injuries to his face, Mark testified that his "ribs were really sore" and his knees were "really messed up," that he "couldn't walk, really," and that he was forced "to crawl to the bathroom at home to go to the bathroom" for the next two to three weeks. Mark also suffered emotional injuries as a result of the incident.

On 4 November 2013, defendant was indicted in Durham County on charges of felonious breaking or entering, felonious assault inflicting serious bodily injury, and first-degree kidnapping. The indictment for kidnapping alleged that defendant "unlawfully, willfully and feloniously did kidnap [Mark], a person over the age of sixteen years, without his consent, by unlawfully restraining him for the purpose of facilitating the commission of a felony, doing serious bodily harm to [Mark], and terrorizing [Mark]." On 7 April 2014, defendant was indicted on charges of first-

degree sexual offense, crime against nature, and intimidating a witness. A separate indictment on 1 June 2015 charged defendant as an habitual felon. The district attorney dismissed the indictment for intimidating a witness, and defendant agreed to proceed on that charge under a criminal bill of information. Additionally, the State dismissed the charge of crime against nature before trial.

Defendant was tried in the Superior Court in Durham County during the criminal session that began on 26 January 2016 before Judge Henry W. Hight, Jr. At trial, the State chose to proceed on second-degree kidnapping instead of first-degree kidnapping. At the close of the State's evidence, defendant moved for dismissal of the charges. The trial court agreed to submit to the jury the charge of misdemeanor assault inflicting serious injury, as opposed to felonious assault inflicting serious bodily injury, and denied defendant's motion with respect to the other charges. On the charge of kidnapping, the trial court instructed the jury:

> Count number three. Under counter [sic] number three, the Defendant has been charged with second degree kidnaping. For you to find the Defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.
> First, that the Defendant unlawfully restrained [Mark], that is, restricted his freedom of movement,
> Second, that [Mark] did not consent to this restraint,
> And, third, the Defendant did this for the purpose of terrorizing [Mark]. Terrorizing means more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension.

On 1 February 2016, the jury found defendant guilty of felonious breaking or entering, misdemeanor assault inflicting serious injury, second-degree kidnapping, first-degree sexual offense, and intimidating a witness. Defendant then admitted to having attained habitual felon status. Judge Hight sentenced defendant to consecutive terms of 150 days for misdemeanor assault inflicting serious injury, 78 to 106 months for breaking and entering, 88 to 118 months for second-degree kidnapping, 336 to 416 months for first-degree sex offense, and 88 to 118 months for intimidating a witness. At the State's request, the trial court conducted a resentencing proceeding on 5 February 2016, at which Judge Hight arrested judgment on the misdemeanor assault inflicting serious injury conviction. Defendant appealed to the Court of Appeals.

At the Court of Appeals, defendant first argued that the trial court erred in allowing the jury to hear that he had been recently released from prison. *China*, ___ N.C. App. at ___, 797 S.E.2d at 327. The panel unanimously held that defendant did not preserve that issue for appeal; therefore, they did not reach the merits of his argument on that issue. *Id.* at ___, ___, 797 S.E.2d at 327-28, 330.

Defendant next argued that the trial court erred in denying his motion to dismiss the kidnapping charge because the evidence was insufficient to prove that any confinement or restraint was separate and apart from the force necessary to facilitate the sex offense. The Court of Appeals majority agreed, noting that this Court has previously opined that "certain felonies . . . cannot be committed without

some restraint of the victim" and the statutory offense of kidnapping "was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes." *Id.* at ___, 797 S.E.2d at 329 (quoting *State v. Ripley*, 360 N.C. 333, 337, 626 S.E.2d 289, 292 (2006)). The majority concluded that the evidence here "describe[d] a sudden attack" that "took no more than a few minutes." *Id.* at ___, 797 S.E.2d at 329. Further, the majority rejected the State's contention that removal of the victim from the bed to the floor and the subsequent stomping and kicking of Mark was an action separate from the assaults themselves. *Id.* at ___, 797 S.E.2d at 329. The majority then concluded that "there is no evidence in the record that Mark was subjected to any restraint beyond that inherent in defendant's commission of first-degree sex offense and misdemeanor assault inflicting serious injury." *Id.* at ___, 797 S.E.2d at 329. Accordingly, the majority concluded that the trial court erred by denying defendant's motions to dismiss the kidnapping charge. *Id.* at ___, 797 S.E.2d at 329. The majority instructed the trial court on remand to vacate defendant's conviction for second-degree kidnapping and correct the judgments to retain defendant's consecutive sentences for his remaining convictions. *Id.* at ___, 797 S.E.2d at 329-30.

Writing separately, Judge Dillon concurred in part and dissented in part; he disagreed with the majority that there was insufficient evidence that defendant "restrained the victim *beyond* the restraint inherent to the sexual assault." *Id.* at ___,

-7-

797 S.E.2d at 330 (Dillon, J., concurring in part and dissenting in part). Judge Dillon noted that the removal of the victim from the bed to the floor occurred after defendant completed his sexual assault on the victim. *Id.* at ___, 797 S.E.2d at 330. Judge Dillon added, "*Then*, while the victim was on the floor, Defendant restrained the victim by beating and kicking the victim, preventing the victim from getting up." *Id.* at ___, 797 S.E.2d at 330. In his dissent, Judge Dillon opined, "Granted, this separate restraint did not last long. But this restraint which occurred while the victim was on the floor was *not* inherent to the sexual assault which was completed while the victim was on the bed." *Id.* at ___, 797 S.E.2d at 330. The dissenting opinion also noted that while defendant was also convicted of assault, the trial court arrested judgment on the assault conviction. *Id.* at ___, 797 S.E.2d at 330 n.3. Accordingly, Judge Dillon would have held that the verdict and judgment for kidnapping should stand. *Id.* at ___, 797 S.E.2d at 330.

The State filed its appeal of right based on the dissent.

## Analysis

The State argues that the trial court did not err in denying defendant's motion to dismiss the kidnapping charge because there was sufficient evidence of restraint that was separate and apart from that inherent in the commission of the sex offense. We agree.

When ruling on a defendant's motion to dismiss for sufficiency of the evidence, the trial court must determine "whether there is substantial evidence (1) of each

essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (first citing *State v. Roseman*, 279 N.C. 573, 580, 184 S.E.2d 289, 294 (1971); then citing *State v. Mason*, 279 N.C. 435, 439, 183 S.E.2d 661, 663 (1971)). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Turnage*, 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)). Furthermore, "the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009) (citing *State v. McCullers,* 341 N.C. 19, 28-29, 460 S.E.2d 163, 168 (1995)). Whether the State has presented substantial evidence is a question of law, which we review de novo. *State v. Cox*, 367 N.C. 147, 150-51, 749 S.E.2d 271, 274-75 (2013) (citations omitted).

The elements of kidnapping are defined by statute. *See Ripley*, 360 N.C. at 337, 626 S.E.2d at 292 ("The offense of kidnapping, as it is now codified in N.C.G.S. § 14-39, did not take form until 1975, when the General Assembly amended section 14-39 and abandoned the traditional common law definition of kidnapping for an element-specific definition."). Section 14-39 now provides, in relevant part:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or

removal is for the purpose of:

. . . .

> (2) Facilitating the commission of any felony or
> facilitating flight of any person following the
> commission of a felony; or
>
> (3) Doing serious bodily harm to or terrorizing the
> person so confined, restrained or removed or any
> other person[.]

N.C.G.S. § 14-39 (2017). Accordingly, to obtain a conviction for second-degree[2]

kidnapping the State is required to prove that a defendant (1) confined, restrained,

or removed from one place to another any other person, (2) unlawfully, (3) without

consent, and (4) for one of the statutorily enumerated purposes.

Following the 1975 amendment to N.C.G.S. § 14-39, this Court addressed in

*State v. Fulcher* whether application of the statute on the theory of "restraint" could

result in a violation of the constitutional prohibition against double jeopardy. 294

N.C. 503, 523, 243 S.E.2d 338, 351 (1978). There the Court explained:

> Such restraint, however, is not kidnapping unless it is . . .
> for one of the purposes specifically enumerated in the
> statute. One of those purposes is the facilitation of the
> commission of a felony.
>
> It is self-evident that certain felonies (*e.g.*, forcible
> rape and armed robbery) cannot be committed without
> some restraint of the victim. We are of the opinion, and so

---

[2] First-degree kidnapping is defined in N.C.G.S. § 14-39(b), which requires the State
to prove, in addition to the elements set forth in subsection (a), at least one of the elements
listed in subsection (b): "that the victim was not released in a safe place, was seriously
injured, or was sexually assaulted." *State v. Bell*, 311 N.C. 131, 137, 316 S.E.2d 611, 614
(1984).

> hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. . . . [W]e construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

*Id.* at 523, 243 S.E.2d at 351.[3]  The Court recognized, however, that "two or more criminal offenses may grow out of the same course of action" and concluded that there is "no constitutional barrier . . . provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony." *Id.* at 523-24, 243 S.E.2d at 351-52.  Furthermore, "[s]uch independent and separate restraint need not be, itself, substantial in time, under G.S. 14-39 as now written." *Id.* at 524, 243 S.E.2d at 352; *see also id.* at 522, 243 S.E.2d at 351  ("It is equally clear that the Legislature rejected our determinations . . . that, where the State relies upon . . . 'restraint,' such must continue 'for some appreciable period of time.'  Thus, it was clearly the intent of the Legislature to make resort to a tape

---

[3] Notably, the Court in *Fulcher* was specifically addressing the purposes enumerated in N.C.G.S. § 14-39(a)(2) ("Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony"), which contemplates another crime (the "other felony") that typically will be charged concurrently with the kidnapping.  294 N.C. at 523-24, 243 S.E.2d at 351-52.  Nonetheless, this Court has applied the same principle to the enumerated purpose of "terrorizing" in N.C.G.S. § 14-39(a)(3).  *See State v. Prevette*, 317 N.C. 148, 155-58, 345 S.E.2d 159, 164-66 (1986) (vacating the defendant's conviction for kidnapping for the purpose of terrorizing because the only evidence of restraint was an inherent and inevitable feature of the victim's murder, for which the defendant was separately convicted).

measure or a stop watch unnecessary in determining whether the crime of kidnapping has been committed.").

The Court has since elaborated on this issue, stressing in *State v. Pigott* that the "key question" is whether there is sufficient evidence of restraint, such that the victim is " 'exposed . . . to greater danger than that inherent in the [other felony] itself, . . . [or] is . . . subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.' " 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (third, fourth, and fifth alterations in original) (quoting *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981)). In *Pigott* the defendant visited the victim (his employer) after midnight asking for a loan. *Id.* at 202, 415 S.E.2d at 557. After the victim refused, the defendant returned to the victim's apartment that same night with a gun. *Id.* at 202, 415 S.E.2d at 557. The defendant threatened the victim with the gun and then "forced him to lie on his stomach and tied his hands behind his back." *Id.* at 210, 415 S.E.2d at 561. After searching the apartment for money, the defendant returned to the victim and asked him whether he had any more money. *Id.* at 210, 415 S.E.2d at 561. The victim responded that he did not, and the defendant then bound the victim's feet to his hands. *Id.* at 210, 415 S.E.2d at 561. The defendant then shot the victim in the head. *Id.* at 202, 210, 415 S.E.2d at 557, 561. At trial, the defendant was convicted of first-degree murder, armed robbery, first-degree arson, and first-degree kidnapping. *Id.* at 202, 415 S.E.2d at 556-57.

The defendant appealed directly to this Court, arguing that there was insufficient evidence of a restraint separate and apart from that inherent in the armed robbery. *Id.* at 208, 415 S.E.2d at 560. The Court disagreed, holding that

> all the restraint necessary and inherent to the armed robbery was exercised by threatening the victim with the gun. When defendant bound the victim's hands and feet, he "exposed [the victim to a] greater danger than that inherent in the armed robbery itself." This action, which had the effect of increasing the victim's helplessness and vulnerability beyond the threat that first enabled defendant to search the premises for money, constituted such additional restraint as to satisfy that element of the kidnapping crime.

*Id.* at 210, 415 S.E.2d at 561 (alteration in original) (quoting *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446). Accordingly, the Court affirmed the defendant's conviction for kidnapping. *Id.* at 210, 215, 415 S.E.2d at 561, 564.

Similarly, Mark's testimony here presented evidence which, taken in the light most favorable to the State, showed that "all the restraint necessary and inherent to the [sex offense] was exercised by" defendant's getting on the bed, positioning himself on top of Mark, and punching Mark in the face and head until Mark was stunned. *Id.* at 210, 415 S.E.2d at 561. In contrast, once Mark swung at defendant and defendant jumped off of Mark, defendant took additional action, "which had the effect of increasing [Mark's] helplessness and vulnerability beyond" the initial blows to Mark's head that enabled defendant to commit the sex offense. *Id.* at 210, 415 S.E.2d at 561. Specifically, while Mark was "kicking away" at defendant, defendant grabbed

Mark by the ankles and yanked him off the bed, causing Mark's head to hit the floor. Then defendant did not attempt to further sexually assault Mark, who was now on the floor pressed against a dresser, but instead defendant called to his companion, who came into the room, where the two of them proceeded to kick and stomp Mark over his entire body. Mark did not attempt to kick or swing at defendant again, but remained balled up on the floor until the kicking ceased. Defendant's actions after Mark swung at him constituted an additional restraint, *see Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351 (describing "restraint" as a "restriction upon freedom of movement"); *see also State v. Beatty*, 347 N.C. 555, 559, 495 S.E.2d 367, 370 (1998) (describing "binding *and kicking*" as "forms of restraint" (emphasis added)), which "exposed [Mark] to greater danger than that inherent in the [sex offense] itself," *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446. For example, Mark testified that, as a result of the kicking and stomping on his knees and legs, which had not been targeted or harmed during the commission of the sex offense, his knees were "really messed up," rendering him unable to walk and forcing him "to crawl to the bathroom at home" for two to three weeks afterwards. Accordingly, we conclude that this additional restraint by defendant constituted "a restraint separate and apart from that which [was] inherent in the commission of the" sex offense. *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351.

In his brief before this Court, defendant largely focuses his argument not on whether there was evidence of restraint separate and apart from that inherent in the

sex offense, but whether there was evidence of restraint separate and apart from that inherent in the commission of misdemeanor assault.[4]  Defendant argues that although the decision in *Fulcher* contemplated "certain *felonies* [that] cannot be committed without some restraint of the victim," *id.* at 523, 243 S.E.2d at 351 (emphasis added), *Fulcher* should be equally applicable to *misdemeanor* offenses because the rationale was that principles of double jeopardy prohibit a defendant from being punished twice for the same conduct.  *Id.* at 523, 243 S.E.2d at 351 ("[N.C.G.S. §] 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes.  To hold otherwise would violate the constitutional prohibition against double jeopardy."); *see also State v. Sparks*, 362 N.C. 181, 186, 657 S.E.2d 655, 659 (2008) ("The [Double Jeopardy] [C]lause protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, *and multiple punishments for the same offense*." (alterations in original) (emphasis added) (quoting *State v. Thompson*, 349 N.C. 483, 495, 508 S.E.2d 277, 284 (1998))).

---

[4] It is unclear whether defendant is conceding that the restraint involved in his kicking and stomping the victim on the floor was separate and apart from that inherent in the commission of the sex offense.  In his brief, defendant asserts that "[i]f the trial court had left out the stomping of the feet from the misdemeanor assault inflicting serious injury jury charge, the evidence would have supported a guilty verdict on the kidnapping charge.  This is because the misdemeanor assault inflicting serious injury charge would be based totally on punches with fists, which all occurred before or during the sexual assault."  On the other hand, defendant also alleges in his brief that "the force necessary to restrain [Mark] was an integral part of the sexual and physical assaults."

Assuming *arguendo*, however, that *Fulcher* applies equally to misdemeanor offenses, here there was no double punishment, and no violation of the prohibition against double jeopardy, because judgment was arrested on the misdemeanor assault conviction.[5]  *See, e.g., State v. Freeland*, 316 N.C. 13, 23-24, 340 S.E.2d 35, 40-41 (1986) (stating that when the defendant's multiple convictions did unconstitutionally subject him to double punishment, the trial court on remand could remedy the violation by arresting judgment on either of the conflicting convictions).

We are careful to note that defendant's sole argument on appeal with regard to the conviction for kidnapping, both below and before this Court, is that the State presented insufficient evidence of the element of "restraint."[6]  On this narrow issue, we conclude that the State presented sufficient evidence of the element of restraint that was separate and apart from that inherent in the commission of the sex offense.

---

[5] In spite of this, defendant argues that judgment was arrested on the misdemeanor assault conviction not because of any conflict with the kidnapping conviction, but because of a conflict with the "serious injury" element of the sex offense conviction.  Yet, defendant cites to no case law, and we are not aware of any, regarding the relevance of this contention.

[6] Defendant does not, for example, argue that the State presented insufficient evidence that any restraint by defendant, which was separate and apart from that inherent in the sex offense, was also for the purposes of terrorizing Mark.  *See, e.g., State v. Moore*, 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986) ("Since kidnapping is a specific intent crime, the State must prove that the defendant unlawfully confined, restrained, or removed the person for one of the eight purposes set out in the statute."); *id.* at 745-46, 340 S.E.2d at 405-06 (concluding that when the defendant, in addition to making threats against the victim's life, "held the victim at gunpoint for almost three hours after inflicting a serious head injury upon her, during which time he threatened to shoot himself in her presence and in the presence of their three-year-old son, and he tried to get her to shoot him," the evidence was sufficient to support a finding that the defendant's purpose was to terrorize the victim).

For the reasons stated, we hold that the trial court did not err in denying defendant's motions to dismiss the charge of second-degree kidnapping. On this issue, we reverse the Court of Appeals and instruct that court to reinstate the judgment of the trial court. The remaining issues addressed by the Court of Appeals are not before this Court and its decision as to these issues remains undisturbed.

REVERSED AND REMANDED.

Justice BEASLEY dissenting.

While I join in Justice Morgan's dissenting opinion, I write separately to discuss the majority's continued expansion of what constitutes sufficient evidence to support a conviction for kidnapping under N.C.G.S. § 14-39. The majority's reasoning permits the State, in future prosecutions, to sustain a conviction for second-degree kidnapping (a Class E felony)[1] with proof that the defendant engaged in an assault (ranging from a Class 2 to Class A1 misdemeanor)[2] which also had the effect of restraining the victim. Because I believe the majority's interpretation of N.C.G.S. § 14-39 transcends the bounds of the legislature's expressed intent, the statute's

---

[1] N.C.G.S. § 14-39(b) (2017) (classifying second-degree kidnapping as a Class E felony).
[2] *Compare* N.C.G.S. § 14-33(a) (2017) (classifying simple assault as a Class 2 misdemeanor) *with id.* § 14-33(c) (2017) (classifying various forms of aggravated assaults, including assault that inflicts serious injury, as Class A1 misdemeanors).

purpose, and notions of fundamental fairness, I respectfully dissent.

A person is guilty of kidnapping if he or she "unlawfully confine[s], restrain[s], or remove[s] from one place to another, any other person 16 years of age or over without the consent of such person," when "such confinement, restraint or removal is for the purpose of," *inter alia*, "[f]acilitating the commission of any felony or facilitating flight of any person following the commission of a felony," N.C.G.S. § 14-39(a)(2) (2017), or "terrorizing the person so confined, restrained or removed," *id.* § 14-39(a)(3) (2017).[3]   However, recognizing that "certain felonies . . . cannot be committed without some restraint of the victim," this Court has held that a restraint which is *inherent to* the commission of the felony which would otherwise supply the predicate felony under subdivision 14-39(a)(2) cannot also support a conviction for kidnapping. *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). Additionally, this Court has held that a restraint which *is inherent to another criminal offense committed by the defendant and for which the defendant is punished*

---

[3] While N.C.G.S. § 14-39 provides other means of supporting a conviction for kidnapping, only subdivisions 14-39(a)(2) and (a)(3) are relevant to this discussion. While the jury was instructed under only subdivision 14-39(a)(3), restraint for the purpose of "terrorizing" the victim, our precedent analyzing situations in which the "restraint" used to establish kidnapping is inherent in the commission of other offenses committed by a defendant has developed under subdivision (a)(2), *see State v. Fulcher*, 294 N.C. 503, 523-24, 243 S.E.2d 338, 351-52 (1978), and has been applied to convictions under subdivision (a)(3), *see State v. Prevette*, 317 N.C. 148, 157-58, 345 S.E.2d 159, 165-66 (1986) (applying *Fulcher* to prohibit the State from using the same conduct to support a conviction for murder *and* the "restraint" element of kidnapping for the purpose of "terrorizing" the victim under subdivision (a)(3)).

cannot support a conviction for kidnapping even when the State proceeds under another provision of subsection 14-39(a) which does not require that the defendant restrain the victim for the purpose of committing a felony. *See State v. Prevette*, 317 N.C. 148, 157-58, 345 S.E.2d 159, 165-66 (1986).

In *Prevette* the defendant was convicted of first-degree murder and first-degree kidnapping. *Id.* at 149, 345 S.E.2d at 160. The State presented evidence that the victim died as a result of suffocation after she was bound and gagged and her hands and feet were also restrained. *Id.* at 150-52, 345 S.E.2d at 161-62. Although the State proceeded on a theory of kidnapping based on the argument that the defendant restrained the victim for the purpose of terrorizing her, *see* N.C.G.S. § 14-39(a)(3), *and not* for the purpose of committing the murder, *see id.* § 14-39(a)(2), this Court held that the binding of the victim's hands and feet, "which prevented the removal of the gag," was *inherent to* the murder and could not support a separate conviction for kidnapping because "the restraint of the victim which resulted in her murder [was] indistinguishable from the restraint used by the State to support the kidnapping charge." *Prevette*, 317 N.C. at 157-58, 345 S.E.2d at 165-66. The Court in *Prevette* "examin[ed] the subject, language, and history" of the kidnapping and murder statutes and concluded that the legislature did not "intend[ ] to authorize punishment for kidnapping when the restraint necessary to accomplish the kidnapping was an inherent part of the first degree murder." *Id.* at 158, 345 S.E.2d at 165-66.

While *Fulcher* and *Prevette* were premised *in part* on the constitutional

prohibition against double jeopardy,[4] *see Fulcher*, 294 N.C. at 523, 525, 243 S.E.2d at 351, 352; *Prevette*, 317 N.C. at 158, 345 S.E.2d at 166, both cases were actually decided on grounds of statutory interpretation.  The Court in *Fulcher* and *Prevette* applied the long-accepted canon of statutory interpretation that, "[w]here one of two reasonable constructions of a statute will raise a serious constitutional question, it is well settled that our courts should adopt the construction that avoids the constitutional question."  *State v. T.D.R.*, 347 N.C. 489, 498, 495 S.E.2d 700, 705 (1998) (first citing *In re Arthur*, 291 N.C. 640, 642, 231 S.E.2d 614, 616 (1977); then citing *In re Arcadia Dairy Farms, Inc.*, 289 N.C. 456, 465-66, 223 S.E.2d 323, 328-29 (1976); and then citing *Kent v. United States*, 383 U.S. 541, 557, 86 S. Ct. 1045, 1055 (1966)); *see also*, *e.g.*, *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (per curiam) (explaining that North Carolina courts "will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds").  Thus, the requirement that the "restraint" under subsection 14-39(a) used to support a kidnapping conviction must not be the same as the restraint inherent to another charged offense for which a defendant receives a sentence is contained within the statute itself under *Fulcher* and *Prevette*.

---

[4] Of course, there is no double jeopardy violation associated with using defendant's assaultive conduct to supply the "restraint" element for kidnapping because, as the majority points out, the trial court arrested judgment on defendant's conviction for misdemeanor assault inflicting serious injury.  The error instead stems from the fact that this conduct is insufficient under the statute to support a conviction for kidnapping *regardless* of whether defendant was convicted or sentenced for the assault offense.

A proper construction of section 14-39, in light of this Court's concerns regarding the expansion of the crime of kidnapping beyond the legislature's intent, would also require that the restraint necessary to support a conviction for kidnapping go beyond an assault that has the incidental effect of restraining the victim. The statute, in relevant part, requires that the defendant restrain the victim *for the purpose* of "facilitating" a felony or "terrorizing" the victim. *See* N.C.G.S. § 14-39(a)(2), (3). Here the majority's interpretation permits defendant's assaultive conduct (pulling the victim off the bed and kicking the victim while he was on the floor) to satisfy the "restraint" element but makes no argument that defendant used this "restraint" *for the purpose of terrorizing the victim* beyond its recitation that the assaultive conduct "exposed [the victim] to [a] greater danger than that inherent in the [sex offense]" or "increas[ed] the victim's helplessness and vulnerability" beyond the earlier restraint used to commit the sex offense. *See State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992). The majority's reasoning is tautological; assaultive conduct that takes place after a completed felony and has the effect of restraining the victim will *always* "expose[ ] [the victim] to [a] greater danger" or "increas[e] the victim's helplessness and vulnerability" because such conduct *is the greater danger.*

Undoubtedly, the defendant's reprehensible criminal conduct (breaking and entering into the residence, restraining the victim in order to commit the sex offense, and then later kicking the victim) had the effect of terrorizing the victim; "[t]his Court should not, however, permit these 'bad facts' to lure it into making 'bad law.' " *N.C.*

*Baptist Hosps., Inc. v. Mitchell*, 323 N.C. 528, 539, 374 S.E.2d 844, 850 (1988) (Meyer, J., dissenting). Importantly, the majority is only relying on the assaultive conduct defendant committed against the victim *after* the sex offense to support the "restraint" element. Although most assaults have the effect of terrorizing the victim, not all assaults are specifically engaged in for the purpose of terrorizing the victim, and—more importantly—not all assaults constitute kidnapping. Yet the majority's opinion would permit any assault that has the effect of confining or restraining the victim to be charged as kidnapping. *See State v. Dix*, 282 N.C. 490, 501, 193 S.E.2d 897, 903-04 (1973) (warning that an expansive definition of kidnapping which "overruns other crimes for which the prescribed punishment is less severe" may "create[ ] the potential for abusive prosecutions" by giving a prosecutor " 'naked and arbitrary power' to choose the crime [to] prosecute" (quoting *People v. Adams*, 34 Mich. App. 546, 560, 192 N.W.2d 19, 26 (1971), *aff'd in part and rev'd in part,* 389 Mich. 222, 205 N.W.2d 415 (1973))), *superseded by statute*, Act of June 25, 1975, ch. 843, 1975 N.C. Sess. Laws 1198 (rewriting N.C.G.S. § 14-39), *as recognized in Fulcher*, 294 N.C. at 521-23, 243 S.E.2d at 350-51.[5]

I would hold that defendant's assaultive conduct (pulling the victim off the bed and kicking him while he was on the floor) is insufficient to support a conviction for

---

[5] While *Dix* interpreted an earlier enactment of the kidnapping statute, *see Dix*, 282 N.C. at 492, 193 S.E.2d at 898 (citing N.C.G.S. § 14-39 (1969)), the thrust of the quoted language recognizing the unjust consequences of expanding the definition of the offense applies with equal force under the current statute.

kidnapping. This factual scenario is not "the kind of danger and abuse the kidnapping statute was designed to prevent." *State v. Irwin,* 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981) (citing *Dix,* 282 N.C. 490, 193 S.E.2d 897); *cf. State v. Moore,* 315 N.C. 738, 745-46, 340 S.E.2d 401, 405-06 (1986) (holding that the evidence was sufficient to show that the defendant's restraint of the victim supported a conviction under N.C.G.S. § 14-39(a)(3) for "terrorizing" the victim when the defendant (1) had previously beaten the victim, (2) moved the victim from his car to his trailer, (3) threatened to shoot the victim if she tried to run, (4) stated he would kill the victim "before letting her take his children away from him," and (5) intermittently pointed a gun at himself or the victim during her confinement in his trailer for almost three hours); *State v. Rodriguez,* 192 N.C. App. 178, 187-89, 664 S.E.2d 654, 660-61 (2008) (holding that evidence was sufficient to show that the defendant's restraint of the victims supported a conviction under N.C.G.S. § 14-39(a)(3) when the defendant (1) "physically abused some of the victims" in close proximity to and within the earshot of other victims, (2) dunked one of the victims under water, (3) burned that victim "so severely that his skin was peeling," and (4) threatened other victims that they would suffer a similar fate if they did not follow his commands or if they contacted law enforcement). Therefore, I respectfully dissent.

Justice MORGAN dissenting.

I respectfully dissent from my learned colleagues in the majority who have determined that there was sufficient evidence of restraint beyond that which was inherent in defendant's commission of the first-degree sex offense to support the second-degree kidnapping conviction. In my view, the Court of Appeals was correct in its determination that the trial court erred in denying defendant's motion to dismiss the charge of second-degree kidnapping because the victim was not subjected to any restriction upon his freedom of movement that was separate and apart from the restraint which was an element of the first-degree sex offense. Accordingly, I would affirm the opinion of the majority of the Court of Appeals in this matter.

I agree with the majority's starting premise that in order to obtain a conviction for second-degree kidnapping, the State must prove that a defendant (1) confined, restrained, or removed from one place to another any other person (2) unlawfully, (3) without consent and (4) for one of the statutory purposes enumerated elsewhere in N.C.G.S. § 14-39, including the provisions in N.C.G.S. § 14-39(a)(2) that the "confinement, restraint or removal is for the purpose of . . . [f]acilitating the commission of any felony or facilitating flight of any person following the commission of a felony," and in N.C.G.S. § 14-39(a)(3) that the "confinement, restraint or removal is for the purpose of . . . [d]oing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person." N.C.G.S. § 14-39(a) (2017).

The crime of first-degree sex offense, as it was codified in N.C.G.S. § 14-27.4 at the time that defendant committed the criminal act,[1] was described in the statute as follows:

> (a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:
>
> (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim; or
>
> (2) With another person by force and against the will of the other person, and:
>
>> a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or
>>
>> b. Inflicts serious personal injury upon the victim or another person; or
>>
>> c. The person commits the offense aided and abetted by one or more other persons.
>
> (b) Any person who commits an offense defined in this section is   guilty of a Class B1 felony.

N.C.G.S. § 14-27.4 (2013).

The majority expressly acknowledges that the Court of Appeals referenced this

---

[1] N.C.G.S. § 14-27.4 was rewritten and recodified as N.C.G.S. § 14-27.26 by Act of July 29, 2015, ch. 181, sec. 8, 2015 NC. Sess. Laws 460, 462 (applying to all offenses committed on or after Dec. 1, 2015).

Court's guidance rendered in *State v. Ripley*, 360 N.C. 333, 626 S.E.2d 289 (2006), regarding the criminal offense of kidnapping and the proper recognition of its elements as relates to other criminal offenses that may be committed during the same transaction of events in which an act of kidnapping occurs. As quoted by the appellate court majority below, we said in *Ripley*:

> It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. . . . [W]e construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

*Id.* at 337, 626 S.E.2d at 292 (italics and alterations in original) (quoting *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978)).

Our analysis in *Ripley* of this area of substantive criminal law governing the commission of multiple criminal offenses continued as follows:

> Additionally, this Court noted that more than one criminal offense can grow out of the same criminal transaction, but specifically held "the restraint, which constitutes the kidnapping, [must be] a separate, complete act, independent of and apart from the other felony." [*Fulcher,* 294 N.C.] at 524, 243 S.E.2d at 352; *see also State v. Beatty*, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998) (noting "a person cannot be convicted of kidnapping when the only evidence of restraint is that 'which is an inherent, inevitable feature' of another felony such as armed robbery"[ ] (quoting *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351)[)].

*Id.* at 337-338, 626 S.E.2d at 292 (first alteration in original).

In the present case, it is clear that there is sufficient evidence in the trial record to support the jury's verdict that defendant is guilty of first-degree sex offense. In perpetrating this offense, defendant satisfied its elements by engaging in a sexual act with the victim by force and against the victim's will. Lifting the salient facts from the majority opinion on this point, defendant punched the victim in the face, knocking him sideways onto the bed. Defendant then got on the bed and on top of the victim, with defendant again using his fist to strike the victim in the face. After a blow from defendant caused the victim to roll over onto his stomach, defendant then stunned the victim with a punch to the back of the head, followed by defendant pulling down the victim's pants and anally penetrating the victim with his penis three times.

Though not a statutory element of the criminal offense of first-degree sex offense, restraint is the means by which defendant effectuated the crime by implementing the force that subverted the will of the victim. The criminal offense of second-degree kidnapping expressly includes restraint as one of the crime's elements delineated in N.C.G.S. § 14-39. Unfortunately, the majority is so occupied with the need to emphasize that a second-degree kidnapping can occur in conjunction with a first-degree sex offense—because restraint is required in the kidnapping offense but not inherent in the first-degree sex offense—that the majority fails to realize, under the unique facts and circumstances of the case at bar, that the restraint utilized to

constitute the force and subvert the will of the victim is the same restraint employed in the full transaction of events that also yielded the miscalculated finding of second-degree kidnapping.

In addition, the majority improperly relied on *State v. Pigott*, 331 N.C. 199, 415 S.E.2d 555 (1992). The majority evaluated the actions of the defendant in *Pigott* in visiting the home of his employer, unsuccessfully asking the employer for a loan, leaving the employer's home but returning with a gun, forcing the employer to lie on the floor, binding the employer's hands, ransacking the premises for money, subsequently binding the employer's feet to the employer's hands, shooting the employer in the head, looking around for more money, and then subsequently setting the employer's premises on fire. *Id.* at 202, 415 S.E.2d at 557. On appeal of the defendant's first-degree murder conviction to this Court, he unsuccessfully argued that it was error for the trial court to fail to dismiss the charge of first-degree kidnapping. *Id.* at 210, 415 S.E.2d at 561.

We held in *Pigott*, in the context of the armed robbery charge which the defendant also faced, that

> all the restraint necessary and inherent to the armed robbery was exercised by threatening the victim with the gun. When defendant bound the victim's hands and feet, he "exposed [the victim to a] greater danger than that inherent in the armed robbery itself." This action, which had the effect of increasing the victim's helplessness and vulnerability beyond the threat that first enabled defendant to search the premises for money, constituted such additional restraint as to satisfy that element of

the kidnapping crime.

*Id.* at 210, 415 S.E.2d at 561 (alteration in original) (quoting *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981)). Based upon this analysis, this Court affirmed the defendant Pigott's first-degree kidnapping conviction.

In the instant case the majority adapts the factual circumstances of *Pigott* to justify its determination that separate and distinct acts of defendant here constituted "additional restraint": defendant's act of grabbing the victim by the ankles and yanking the victim off of the bed, which in turn caused the victim's head to hit the floor after the sex offense, and defendant's act of summoning his companion to join in kicking and stomping the victim's body. In stating that these actions of defendant amounted to an "additional restraint" which "exposed [Mark][2] to greater danger than that inherent in the [sex offense] itself," the majority concludes that this activity constituted "a restraint separate and apart from that which was inherent to the commission of the sex offense."

In attempting to align the case *sub judice* with *Pigott*, the majority buttresses the point of my dissenting view. There was a separate restraint of the victim employer in *Pigott* that went beyond the restraint inherent in the armed robbery offense itself so as to constitute the defendant's commission of first-degree

---

[2] This pseudonym was utilized by the appellate courts for simplicity and to protect the victim's privacy.

kidnapping, in that the defendant intermittently perpetrated increasingly heightened levels of restrictions on the victim's freedom of movement while committing the armed robbery offense, namely:  forcing the victim to lie on the floor <u>after</u> returning to the premises with a gun, looking for money <u>after</u> binding the victim's hands, continuing to look around for more money <u>after</u> binding the victim's feet to his hands and shooting the victim in the head as the victim continued to apparently survive this ordeal until the defendant ignited the fire that burned portions of the premises and generated deadly carbon monoxide fumes.  *Id*. at 202, 415 S.E.2d at 560.  On the other hand, there was no additional restraint which was employed by defendant to commit the first-degree sex offense because the requisite restraint was inherent in the perpetration of the crime.  To the extent that the majority considers defendant's violence against the victim after the completion of the sex offense to constitute an "additional restraint" to justify second-degree kidnapping as a separate offense, such a strained view has no validity for four reasons:  (1) N.C.G.S. § 14-39(a)(2) is not applicable, because the felony of first-degree sex offense was already completed such that the commission of second-degree kidnapping after the perpetration of the sex offense could not have facilitated the sex offense; (2) N.C.G.S. § 14-39(a)(2) also does not apply because the additional "restraint" was not for the purpose of "facilitating [defendant's] flight . . . following [his] commission of" the first-degree sex offense; rather, the evidence in the trial record shows that the victim ran out of the residence shortly after the two men stopped kicking him; (3)

N.C.G.S. § 14-39(a)(3) likewise is not applicable, because the trial record does not afford this Court an opportunity to determine, on appellate review, at what points in time the victim's successive injuries occurred and when the terror that resulted in his emotional injuries were inflicted; and (4) at trial, the jury found defendant guilty as charged of misdemeanor assault inflicting serious injury which, coupled with the first-degree sex offense indictment and conviction appropriately identified all offenses for which defendant could be charged and convicted as a result of any injuries suffered by the victim during the entire transaction of events, and the trial court arrested judgment on the misdemeanor assault conviction.

As we opined in *Ripley* and its predecessor cases, use of the word "restrain" in N.C.G.S. § 14-39 means that the criminal restriction of one's freedom of movement must be separate and apart from the restraint that is inherent in the commission of another felony. Under the facts and circumstances of this case, the restraint that was inherent in defendant's commission of the first-degree sex offense did not extend beyond the crime's parameters so as to support the jury's guilty verdict of second-degree kidnapping. Therefore, I would affirm the decision of the Court of Appeals.

Justice BEASLEY joins in this dissenting opinion.