HUDSON, Justice.
**628 Defendant Nathaniel Malone China was convicted by a jury on 1 February 2016 of a number of offenses, including felonious breaking or entering, first-degree sexual offense, second-degree kidnapping, misdemeanor assault inflicting serious injury, and intimidating a witness. Here we must decide whether there was sufficient evidence of restraint that was separate and apart from that inherent in the commission of the first-degree sex offense to support the kidnapping conviction. The Court of Appeals concluded that there was not and vacated defendant's conviction for second-degree kidnapping. State v. China , --- N.C. App. ----, ----, 797 S.E.2d 324, 328-30 (2017). Because we conclude that the evidence of restraint beyond that inherent in the commission of the sex offense did suffice, we reverse the decision of the Court of Appeals.
Factual and Procedural Background
In 2008 defendant began a romantic relationship with Nichelle Brooks. At some point thereafter, defendant was sent to prison. During his incarceration, until the summer of 2013, defendant continued to talk occasionally with Ms. Brooks by telephone. On one of these phone calls, Ms. Brooks, who was then involved with Mark,[1] informed defendant that she had begun a new relationship. Nonetheless, defendant called Ms. Brooks after his release from prison seeking to resume their prior relationship. Ms. Brooks agreed to meet with defendant at her apartment, hoping to make clear that their relationship was over. Later that day, defendant met Ms. Brooks at her apartment, spent the night, and then left the following morning.
During this time, Ms. Brooks asked Mark not to visit her for a few days so that she could "get things in order" with defendant. Believing that she had successfully ended her relationship with defendant, Ms. Brooks told Mark that he could return to her apartment. Mark visited Ms. Brooks on 14 October 2013 and spent the night at her apartment. The following morning, 15 October, Mark was still asleep when Ms. Brooks left to take her daughter to the bus stop and to go to school at Durham Beauty Academy.
Mark awoke when he heard people outside of the apartment. He looked out the window and, not seeing anything of concern, returned to bed. Moments later, Mark heard a knock; he went to the door, looked through the peephole, and saw two men he did not recognize. At trial, Mark identified one of these men as defendant. As Mark made his way **629 back to the bedroom, he heard banging on the door, enough to cause the door to shake. Mark began to dress in his work uniform, when he heard a loud boom as the door was kicked in.
Defendant rushed into the apartment and ran towards the bedroom, cursing at Mark. Before Mark had a chance to defend himself, defendant punched him in the face, knocking him sideways onto the bed. Defendant then got on the bed and on top of Mark, continuing to curse and strike Mark in the face with his fist. Defendant was hitting Mark solely in the face up to this point, and the last blow caused Mark to roll over completely onto his stomach. At that point, defendant punched Mark in the back of the head, stunning him. Defendant then pulled down Mark's pants and anally penetrated him three times with his penis.
Mark then swung his right arm to get defendant off of him, and defendant "jumped off of" Mark. While Mark was "kicking away" at defendant, defendant grabbed him by the ankles, yanking him off the bed and causing the back of Mark's head to hit the floor. Defendant called to his companion, who came into the room; together they began "kicking and stomping" Mark, who was on the floor *147 with his back pressed against a dresser. Mark testified that the two men were kicking and stomping "[m]y face, my head, my back, my ribs, my legs, my knees. ... It was everywhere." During this time, Mark "was balling [his body] up" trying to protect himself. Eventually, defendant and the other man stopped kicking, and Mark quickly got up and ran out of the apartment. Mark still had his keys in his pocket, and although he was dizzy and bleeding badly, he ran to his car and was able to drive to his place of employment for help. Mark woke up at Duke Hospital in a significant amount of pain. In addition to the injuries to his face, Mark testified that his "ribs were really sore" and his knees were "really messed up," that he "couldn't walk, really," and that he was forced "to crawl to the bathroom at home to go to the bathroom" for the next two to three weeks. Mark also suffered emotional injuries as a result of the incident.
On 4 November 2013, defendant was indicted in Durham County on charges of felonious breaking or entering, felonious assault inflicting serious bodily injury, and first-degree kidnapping. The indictment for kidnapping alleged that defendant "unlawfully, willfully and feloniously did kidnap [Mark], a person over the age of sixteen years, without his consent, by unlawfully restraining him for the purpose of facilitating the commission of a felony, doing serious bodily harm to [Mark], and terrorizing [Mark]." On 7 April 2014, defendant was indicted on charges of first-degree sexual offense, crime against nature, and intimidating a witness. A separate indictment on 1 June 2015 charged defendant as **630 an habitual felon. The district attorney dismissed the indictment for intimidating a witness, and defendant agreed to proceed on that charge under a criminal bill of information. Additionally, the State dismissed the charge of crime against nature before trial.
Defendant was tried in the Superior Court in Durham County during the criminal session that began on 26 January 2016 before Judge Henry W. Hight, Jr. At trial, the State chose to proceed on second-degree kidnapping instead of first-degree kidnapping. At the close of the State's evidence, defendant moved for dismissal of the charges. The trial court agreed to submit to the jury the charge of misdemeanor assault inflicting serious injury, as opposed to felonious assault inflicting serious bodily injury, and denied defendant's motion with respect to the other charges. On the charge of kidnapping, the trial court instructed the jury:
Count number three. Under counter [sic] number three, the Defendant has been charged with second degree kidnaping. For you to find the Defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.
First, that the Defendant unlawfully restrained [Mark], that is, restricted his freedom of movement,
Second, that [Mark] did not consent to this restraint,
And, third, the Defendant did this for the purpose of terrorizing [Mark]. Terrorizing means more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension.
On 1 February 2016, the jury found defendant guilty of felonious breaking or entering, misdemeanor assault inflicting serious injury, second-degree kidnapping, first-degree sexual offense, and intimidating a witness. Defendant then admitted to having attained habitual felon status. Judge Hight sentenced defendant to consecutive terms of 150 days for misdemeanor assault inflicting serious injury, 78 to 106 months for breaking and entering, 88 to 118 months for second-degree kidnapping, 336 to 416 months for first-degree sex offense, and 88 to 118 months for intimidating a witness. At the State's request, the trial court conducted a resentencing proceeding on 5 February 2016, at which Judge Hight arrested judgment on the misdemeanor assault inflicting serious injury conviction. Defendant appealed to the Court of Appeals.
**631 At the Court of Appeals, defendant first argued that the trial court erred in allowing the jury to hear that he had been recently released from prison. China , --- N.C. App. at ----, 797 S.E.2d at 327. The panel unanimously held that defendant did not preserve that issue for appeal; therefore, they did not reach the merits of his argument on that *148 issue. Id. at ----, ----, 797 S.E.2d at 327-28, 330.
Defendant next argued that the trial court erred in denying his motion to dismiss the kidnapping charge because the evidence was insufficient to prove that any confinement or restraint was separate and apart from the force necessary to facilitate the sex offense. The Court of Appeals majority agreed, noting that this Court has previously opined that "certain felonies ... cannot be committed without some restraint of the victim" and the statutory offense of kidnapping "was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes." Id. at ----, 797 S.E.2d at 329 (quoting State v. Ripley , 360 N.C. 333, 337, 626 S.E.2d 289, 292 (2006) ). The majority concluded that the evidence here "describe[d] a sudden attack" that "took no more than a few minutes." Id. at ----, 797 S.E.2d at 329. Further, the majority rejected the State's contention that removal of the victim from the bed to the floor and the subsequent stomping and kicking of Mark was an action separate from the assaults themselves. Id. at ----, 797 S.E.2d at 329. The majority then concluded that "there is no evidence in the record that Mark was subjected to any restraint beyond that inherent in defendant's commission of first-degree sex offense and misdemeanor assault inflicting serious injury." Id. at ----, 797 S.E.2d at 329. Accordingly, the majority concluded that the trial court erred by denying defendant's motions to dismiss the kidnapping charge. Id. at ----, 797 S.E.2d at 329. The majority instructed the trial court on remand to vacate defendant's conviction for second-degree kidnapping and correct the judgments to retain defendant's consecutive sentences for his remaining convictions. Id. at ----, 797 S.E.2d at 329-30.
Writing separately, Judge Dillon concurred in part and dissented in part; he disagreed with the majority that there was insufficient evidence that defendant "restrained the victim beyond the restraint inherent to the sexual assault." Id. at ----, 797 S.E.2d at 330 (Dillon, J., concurring in part and dissenting in part). Judge Dillon noted that the removal of the victim from the bed to the floor occurred after defendant completed his sexual assault on the victim. Id. at ----, 797 S.E.2d at 330. Judge Dillon added, "Then , while the victim was on the floor, Defendant restrained the victim by beating and kicking the victim, preventing the victim **632 from getting up." Id. at ----, 797 S.E.2d at 330. In his dissent, Judge Dillon opined, "Granted, this separate restraint did not last long. But this restraint which occurred while the victim was on the floor was not inherent to the sexual assault which was completed while the victim was on the bed." Id. at ----, 797 S.E.2d at 330. The dissenting opinion also noted that while defendant was also convicted of assault, the trial court arrested judgment on the assault conviction. Id. at ----, 797 S.E.2d at 330 n.3. Accordingly, Judge Dillon would have held that the verdict and judgment for kidnapping should stand. Id. at ----, 797 S.E.2d at 330.
The State filed its appeal of right based on the dissent.
Analysis
The State argues that the trial court did not err in denying defendant's motion to dismiss the kidnapping charge because there was sufficient evidence of restraint that was separate and apart from that inherent in the commission of the sex offense. We agree.
When ruling on a defendant's motion to dismiss for sufficiency of the evidence, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Powell , 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (first citing State v. Roseman , 279 N.C. 573, 580, 184 S.E.2d 289, 294 (1971) ; then citing State v. Mason , 279 N.C. 435, 439, 183 S.E.2d 661, 663 (1971) ). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." State v. Turnage , 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008) (quoting State v. Crawford , 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) ). Furthermore, "the trial court must consider the evidence in the light most favorable to the *149 State, drawing all reasonable inferences in the State's favor." State v. Miller , 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009) (citing State v. McCullers, 341 N.C. 19, 28-29, 460 S.E.2d 163, 168 (1995) ). Whether the State has presented substantial evidence is a question of law, which we review de novo. State v. Cox , 367 N.C. 147, 150-51, 749 S.E.2d 271, 274-75 (2013) (citations omitted).
The elements of kidnapping are defined by statute. See Ripley , 360 N.C. at 337, 626 S.E.2d at 292 ("The offense of kidnapping, as it is now codified in N.C.G.S. § 14-39, did not take form until 1975, when the General Assembly amended section 14-39 and abandoned the traditional common law definition of kidnapping for an element-specific definition."). Section 14-39 now provides, in relevant part:
**633 (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
....
(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]
N.C.G.S. § 14-39 (2017). Accordingly, to obtain a conviction for second-degree[2] kidnapping the State is required to prove that a defendant (1) confined, restrained, or removed from one place to another any other person, (2) unlawfully, (3) without consent, and (4) for one of the statutorily enumerated purposes.
Following the 1975 amendment to N.C.G.S. § 14-39, this Court addressed in State v. Fulcher whether application of the statute on the theory of "restraint" could result in a violation of the constitutional prohibition against double jeopardy. 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). There the Court explained:
Such restraint, however, is not kidnapping unless it is ... for one of the purposes specifically enumerated in the statute. One of those purposes is the facilitation of the commission of a felony.
It is self-evident that certain felonies (e.g. , forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable **634 feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. ... [W]e construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.
Id. at 523, 243 S.E.2d at 351.[3] The Court recognized, however, that "two or more criminal offenses may grow out of the same course of action" and concluded that there is "no constitutional barrier ... provided the *150 restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony." Id. at 523-24, 243 S.E.2d at 351-52. Furthermore, "[s]uch independent and separate restraint need not be, itself, substantial in time, under G.S. 14-39 as now written." Id. at 524, 243 S.E.2d at 352 ; see also id. at 522, 243 S.E.2d at 351 ("It is equally clear that the Legislature rejected our determinations ... that, where the State relies upon ... 'restraint,' such must continue 'for some appreciable period of time.' Thus, it was clearly the intent of the Legislature to make resort to a tape measure or a stop watch unnecessary in determining whether the crime of kidnapping has been committed.").
The Court has since elaborated on this issue, stressing in State v. Pigott that the "key question" is whether there is sufficient evidence of restraint, such that the victim is " 'exposed ... to greater danger than that inherent in the [other felony] itself, ... [or] is ... subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.' " 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (third, fourth, and fifth alterations in original) (quoting State v. Irwin , 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981) ). In Pigott the defendant visited the victim (his employer) after midnight asking for a loan. Id. at 202, 415 S.E.2d at 557. After the victim refused, the defendant returned to the victim's apartment that same night with a gun. Id. at 202, 415 S.E.2d at 557. The **635 defendant threatened the victim with the gun and then "forced him to lie on his stomach and tied his hands behind his back." Id. at 210, 415 S.E.2d at 561. After searching the apartment for money, the defendant returned to the victim and asked him whether he had any more money. Id. at 210, 415 S.E.2d at 561. The victim responded that he did not, and the defendant then bound the victim's feet to his hands. Id. at 210, 415 S.E.2d at 561. The defendant then shot the victim in the head. Id. at 202, 210, 415 S.E.2d at 557, 561. At trial, the defendant was convicted of first-degree murder, armed robbery, first-degree arson, and first-degree kidnapping. Id. at 202, 415 S.E.2d at 556-57.
The defendant appealed directly to this Court, arguing that there was insufficient evidence of a restraint separate and apart from that inherent in the armed robbery. Id. at 208, 415 S.E.2d at 560. The Court disagreed, holding that
all the restraint necessary and inherent to the armed robbery was exercised by threatening the victim with the gun. When defendant bound the victim's hands and feet, he "exposed [the victim to a] greater danger than that inherent in the armed robbery itself." This action, which had the effect of increasing the victim's helplessness and vulnerability beyond the threat that first enabled defendant to search the premises for money, constituted such additional restraint as to satisfy that element of the kidnapping crime.
Id. at 210, 415 S.E.2d at 561 (alteration in original) (quoting Irwin , 304 N.C. at 103, 282 S.E.2d at 446 ). Accordingly, the Court affirmed the defendant's conviction for kidnapping. Id. at 210, 215, 415 S.E.2d at 561, 564.
Similarly, Mark's testimony here presented evidence which, taken in the light most favorable to the State, showed that "all the restraint necessary and inherent to the [sex offense] was exercised by" defendant's getting on the bed, positioning himself on top of Mark, and punching Mark in the face and head until Mark was stunned. Id. at 210, 415 S.E.2d at 561. In contrast, once Mark swung at defendant and defendant jumped off of Mark, defendant took additional action, "which had the effect of increasing [Mark's] helplessness and vulnerability beyond" the initial blows to Mark's head that enabled defendant to commit the sex offense. Id. at 210, 415 S.E.2d at 561. Specifically, while Mark was "kicking away" at defendant, defendant grabbed Mark by the ankles and yanked him off the bed, causing Mark's head to hit the floor. Then defendant did not attempt to further sexually assault Mark, who **636 was now on the floor pressed against a dresser, but instead defendant called to his companion, who came into the room, where the two of them proceeded to kick and stomp Mark over his entire body. Mark did not attempt to kick or swing at defendant again, but remained balled up on the floor until the kicking ceased. Defendant's actions after Mark swung at him constituted an additional *151 restraint, see Fulcher , 294 N.C. at 523, 243 S.E.2d at 351 (describing "restraint" as a "restriction upon freedom of movement"); see also State v. Beatty , 347 N.C. 555, 559, 495 S.E.2d 367, 370 (1998) (describing "binding and kicking " as "forms of restraint" (emphasis added) ), which "exposed [Mark] to greater danger than that inherent in the [sex offense] itself," Irwin , 304 N.C. at 103, 282 S.E.2d at 446. For example, Mark testified that, as a result of the kicking and stomping on his knees and legs, which had not been targeted or harmed during the commission of the sex offense, his knees were "really messed up," rendering him unable to walk and forcing him "to crawl to the bathroom at home" for two to three weeks afterwards. Accordingly, we conclude that this additional restraint by defendant constituted "a restraint separate and apart from that which [was] inherent in the commission of the" sex offense. Fulcher , 294 N.C. at 523, 243 S.E.2d at 351.
In his brief before this Court, defendant largely focuses his argument not on whether there was evidence of restraint separate and apart from that inherent in the sex offense, but whether there was evidence of restraint separate and apart from that inherent in the commission of misdemeanor assault.[4] Defendant argues that although the decision in Fulcher contemplated "certain felonies [that] cannot be committed without some restraint of the victim," id. at 523, 243 S.E.2d at 351 (emphasis added), Fulcher should be equally applicable to misdemeanor offenses because the rationale was that principles of double jeopardy prohibit a defendant from being punished twice for the same conduct. Id. at 523, 243 S.E.2d at 351 ("[N.C.G.S. §] 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the **637 constitutional prohibition against double jeopardy."); see also State v. Sparks , 362 N.C. 181, 186, 657 S.E.2d 655, 659 (2008) ("The [Double Jeopardy] [C]lause protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense ." (alterations in original) (emphasis added) (quoting State v. Thompson , 349 N.C. 483, 495, 508 S.E.2d 277, 284 (1998) ) ). Assuming arguendo , however, that Fulcher applies equally to misdemeanor offenses, here there was no double punishment, and no violation of the prohibition against double jeopardy, because judgment was arrested on the misdemeanor assault conviction.[5] See, e.g. , State v. Freeland , 316 N.C. 13, 23-24, 340 S.E.2d 35, 40-41 (1986) (stating that when the defendant's multiple convictions did unconstitutionally subject him to double punishment, the trial court on remand could remedy the violation by arresting judgment on either of the conflicting convictions).
We are careful to note that defendant's sole argument on appeal with regard to the conviction for kidnapping, both below and before this Court, is that the State presented insufficient evidence of the element of "restraint."[6] On this narrow issue, we conclude *152 that the State presented sufficient evidence of the element of restraint that was separate and apart from that inherent in the commission of the sex offense.
For the reasons stated, we hold that the trial court did not err in denying defendant's motions to dismiss the charge of second-degree kidnapping. On this issue, we reverse the Court of Appeals and instruct that **638 court to reinstate the judgment of the trial court. The remaining issues addressed by the Court of Appeals are not before this Court and its decision as to these issues remains undisturbed.
REVERSED AND REMANDED.

Like the Court of Appeals, we refer to the victim here by the pseudonym "Mark" for simplicity and to protect his privacy.

First-degree kidnapping is defined in N.C.G.S. § 14-39(b), which requires the State to prove, in addition to the elements set forth in subsection (a), at least one of the elements listed in subsection (b): "that the victim was not released in a safe place, was seriously injured, or was sexually assaulted." State v. Bell , 311 N.C. 131, 137, 316 S.E.2d 611, 614 (1984).

Notably, the Court in Fulcher was specifically addressing the purposes enumerated in N.C.G.S. § 14-39(a)(2) ("Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony"), which contemplates another crime (the "other felony") that typically will be charged concurrently with the kidnapping. 294 N.C. at 523-24, 243 S.E.2d at 351-52. Nonetheless, this Court has applied the same principle to the enumerated purpose of "terrorizing" in N.C.G.S. § 14-39(a)(3). See State v. Prevette , 317 N.C. 148, 155-58, 345 S.E.2d 159, 164-66 (1986) (vacating the defendant's conviction for kidnapping for the purpose of terrorizing because the only evidence of restraint was an inherent and inevitable feature of the victim's murder, for which the defendant was separately convicted).

It is unclear whether defendant is conceding that the restraint involved in his kicking and stomping the victim on the floor was separate and apart from that inherent in the commission of the sex offense. In his brief, defendant asserts that "[i]f the trial court had left out the stomping of the feet from the misdemeanor assault inflicting serious injury jury charge, the evidence would have supported a guilty verdict on the kidnapping charge. This is because the misdemeanor assault inflicting serious injury charge would be based totally on punches with fists, which all occurred before or during the sexual assault." On the other hand, defendant also alleges in his brief that "the force necessary to restrain [Mark] was an integral part of the sexual and physical assaults."

In spite of this, defendant argues that judgment was arrested on the misdemeanor assault conviction not because of any conflict with the kidnapping conviction, but because of a conflict with the "serious injury" element of the sex offense conviction. Yet, defendant cites to no case law, and we are not aware of any, regarding the relevance of this contention.

Defendant does not, for example, argue that the State presented insufficient evidence that any restraint by defendant, which was separate and apart from that inherent in the sex offense, was also for the purposes of terrorizing Mark. See, e.g. , State v. Moore , 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986) ("Since kidnapping is a specific intent crime, the State must prove that the defendant unlawfully confined, restrained, or removed the person for one of the eight purposes set out in the statute."); id. at 745-46, 340 S.E.2d at 405-06 (concluding that when the defendant, in addition to making threats against the victim's life, "held the victim at gunpoint for almost three hours after inflicting a serious head injury upon her, during which time he threatened to shoot himself in her presence and in the presence of their three-year-old son, and he tried to get her to shoot him," the evidence was sufficient to support a finding that the defendant's purpose was to terrorize the victim).